## In re LISTMAN'S ESTATE.

No. 3492. · Decided January 31, 1921.   (197 Pac. 596.)

1.  EXECUTORS AND ADMINISTRATORS—EVIDENCE HELD TO SUPPORT FINDING OF EXECUTOR'S DELINQUENCIES IN FAILING TO INVEST. On objections by a widow and others to the account of her deceased husband's executor, evidence *held* to support the findings of the trial court as to the executor's delinquencies in failing to invest funds of the estate as required by order of court, etc.

2.  EXECUTORS AND ADMINISTRATORS—EXECUTOR WHO EXERCISES ORDINARY CARE NOT LIABLE, BUT HE MUST NOT ·DEPART FROM DUTIES UNDER WILL. An executor is not an insurer, and if, in the management of the affairs of the estate, he exercises ordinary care and diligence, he may not be held liable for mistake or error in judgment, but he cannot depart from the duties he has undertaken under the will and cause loss to the estate and beneficiaries, particularly where the will gives him no discretion.

3. EXECUTORS AND ADMINISTRATORS—COURT MAY MODIFY TERMS OF EXECUTOR'S TRUST TO PREVENT LOSS AND DESTRUCTION. Where the intervention and exercise of the equitable powers of the court are required to prevent financial loss and destruction of a decedent's estate, being administered under his will, the court may modify the terms of the trust to such an extent as may be found necessary to prevent loss and destruction of the estate property.

4. EXECUTORS AND ADMINISTRATORS—EXECUTOR NEGLIGENT IN LEAVING FUNDS IN BANK AFTER HE WAS DIRECTED TO INVEST THEM IN BONDS. Where an executor was directed by the will to invest funds of the estate in real estate mortgages, but, on the ground that at the particular time such investment would be uncertain, difficult, and expensive, procured an order of court to deposit the funds of the estate in certain banks, and subsequently procured an order to purchase United States Liberty Bonds at the market price with such funds, but left the funds with a bank in which he was financially interested, both as stockholder and depositor, for some six months after the court directed the investment in bonds, whereby an amount was lost to the estate through the failure of such bank, the executor's conduct was negligence rendering him liable to the estate for the amount lost.

5. EXECUTORS AND ADMINISTRATORS—INTEREST NOT CHARGEABLE AGAINST REPRESENTATIVE AS OF COURSE. Interest is not chargeable as a matter of course against an executor, but may be so charged if the circumstances of the particular case require it.

6. EXECUTORS AND ADMINISTRATORS—EXECUTOR WHO FAILED TO INVEST IN BONDS AS DIRECTED CHARGEABLE WITH INTEREST AT 4¼ PER CENT. Executor who, when directed by the court to invest funds of the estate in Liberty Bonds, neglected to do so for six months, leaving the funds in a bank in which he was interested as stockholder and depositor, whereby a loss accrued to the estate through failure of the bank, *held* chargeable with the 4¼ per cent. interest per annum which the bonds would have earned if the funds had been invested in time as directed by the court.

Appeal from District Court, Third District, Salt Lake County; *John F. Tobin*, Judge.

In the matter of the estate of Charles W. Listman, deceased. Petition by Bertha L. Listman for order requiring John P.

J. Schneider, decedent's executor, to render an account and report of his administration of the estate, petitioner and others objecting to the account as rendered. From judgment for petitioner and others, the executor appeals.

AFFIRMED.

*J. E. Darmer* and *King, Braffet & Schulder*, all of Salt Lake City, for appellant.

*Ogden Hiles* and *Ball, Musser & Robertson*, all of Salt Lake City, for respondents.

CORFMAN, C. J.

Charles W. Listman died in Salt Lake City, Utah, November 24, 1915, leaving a will. He left surviving him his wife, Bertha L. Listman, and two children, Charles Warner Listman and Ethel May Listman, the beneficiaries named in said will, all of whom appear as the objectors and respondents herein. The will was admitted to probate in the district court of Salt Lake county on the 17th day of December, 1915, and at said time John P. J. Schneider, the defendant and appellant herein, became the duly appointed and qualified executor thereof, and has since continued to act in that capacity.

At the time of the death of Charles W. Listman, he and the appellant, John P. J. Schneider, were copartners in business, conducting what was known as the "Success Market," a merchandising establishment in Salt Lake City, Utah. The will of the said Charles W. Listman, among other things, provided:

"And I further direct that my said partner and executor hereinafter named, have full control and charge of my interest in said 'Success Market' and company's business, and that he, as soon as he is able to do so, sell my aforesaid interest in said 'Success Market,' or Schneider and Company's business, and out of the proceeds of said sale, my said executor hereinafter named is hereby directed to loan the same upon safe real property security,

*at best rate of interest obtainable, always with a view of making said loans absolutely secure."*

Pursuant to the directions of said will, and as provided for by statute in such cases, the appellant settled and closed up the said partnership affairs, and thereafter, on the 29th day of December, 1916, as the executor of said will, rendered and presented to the district court an executor's annual account, wherein it was shown and found that the appellant, as such executor, had on hand in Salt Lake City banks, at that time, funds belonging to the estate of the said Charles W. Listman to the amount of $19,761.85. Upon the petition of appellant as such executor, and after due notice and a hearing thereon, on said 29th day of December, 1916, the district court ordered, adjudged, and decreed:

"That said John P. J. Schneider, executor of the last will and testament of said Charles W. Listman, deceased, is ordered to loan the funds amounting to $19,000, and all other moneys coming into his hands hereafter not necessary for expenses of said estate in Merchants' Bank, and Walker Brothers' Bank, or either of them, Salt Lake City, Utah, with interest thereon at the rate of not less than 4 per cent. per annum, and the interest accruing thereon; said executor is further ordered to pay over and deliver to Alberta Listman, widow of said deceased, the same and the whole thereof, for the support of herself and deceased's two children."

Said orders of the court were predicated upon the testimony of the appellant, in effect, representing that "it would be difficult," and "large expense entailed by the loaning of said money upon real property at this time as directed by said deceased in his last will and testament," and, upon request of the appellant, "that said money be deposited in certain banks in Salt Lake City, Utah, on time deposits, with interest thereon at the rate of 4 per cent. per annum." Thereafter, pursuant to said order of the district court, the funds belonging to said estate were deposited in and remained with the said Merchants' Bank to draw interest in accordance with the said order of court, at the rate of 4 per cent. per annum, and until December 28, 1917, when the appellant filed another petition in said court asking an order authorizing him to make use of the funds belonging to said estate in the fol-

lowing way, to-wit: To loan $4,500 to respondent Bertha L. Listman, to be secured by mortgage upon real property in said petition mentioned and described; to invest $14,000 in a certain mortgage upon real property given by the Butte-Salt Lake Investment Company, a corporation, to the Merchants' Bank, payable in one year, with interest at the rate of 6 per cent. per annum; and—

"that the remainder of the money in the hands of petitioner, including the sums above mentioned, should same not be loaned upon the security above set out and described, or either of them, in whatever amounts your petitioner and executor may be authorized by order to invest same and the whole thereof in United States Liberty Bonds."

With said petition, written waivers of the notice of hearing of the same and requests that the said petition be granted were filed by respondents. After a hearing on said petition the court, by its order, authorized said loan on real estate security to be made and said mortgage to be purchased, "provided the payment of said mortgage is guaranteed by the Merchants' Bank of Salt Lake City." With regard to any residue of the money remaining in the hands of the appellant, the court further authorized and directed as follows:

"It is further ordered that the executor aforesaid be, and he is hereby, authorized, directed and empowered to purchase with the rest and residue of the money of said estate, United States Liberty Bonds at the market price therefor; and it is further ordered and directed that should either of said loans above set out and described, to wit, to Bertha Listman, or the purchase of the mortgage from the Merchants' Bank not be made, that then and in that case either or both of said amounts to said Bertha Listman and the Merchants' Bank shall be invested by the executor hereof in said United States Liberty Bonds."

Pursuant to said order of the court the appellant made a loan of $4,500 to Bertha L. Listman, but the said mortgage for $14,000 was not purchased, for the reason, as assigned, that the appellant, upon investigation, deemed the security insufficient. No Liberty Bonds were purchased from the time of the making of said order, December 28, 1917, until in April, 1918, when the appellant, through his attorney, subscribed for $14,000 worth of bonds and made the initial pay-

ment thereon of $700, by check drawn on said Merchants' Bank. A further payment of $2,800 was in like manner made on said bond subscription in May, 1918. Meanwhile the funds belonging to said estate had remained on deposit with the said Merchants' Bank until July 8, 1918, when said bank closed its doors, failed, and refused to do business, and its affairs passed into the hands of a receiver. Thereafter, in July, 1918, the respondent Bertha L. Listman petitioned the court for an order requiring the appellant, as the executor of said estate, to render an account and a report of his administration of said estate. The court so ordered, and, upon rendition of said account by appellant, the respondents appeared and objected to the same as rendered, asking that certain items therein mentioned and set forth be disallowed, and that the letters testamentary theretofore issued to appellant be revoked, for the reason that he had failed and neglected to properly perform and discharge the duties of his trust. The appellant answered the petition of respondents, and, the matter being brought on for trial, the district court, after a hearing, found the issues in favor of the respondents and rendered its findings of fact and conclusions of law, and ordered and decreed as follows:

"That the account of the executor be, and hereby is, disallowed to the extent of $16,549.21 and that the executor, John P. J. Schneider, pay to this estate the said sum, together with interest at the rate of 8 per cent. per annum from the 26th day of November, 1919, and for costs; * * * that the letters testamentary heretofore issued to said executor be revoked. * * * "

The appellant, upon appeal to this court, assails the findings of fact, conclusions of law, and decree of the district court, upon the grounds that they are not supported by the evidence, and that the same are contrary to law. We have referred to and pointed out the proceedings in probate leading up to the rendition of the judgment and decree complained of by appellant. There is practically no dispute as to the facts in this case. The testimony shows that after the partnership affairs of the Success Market were closed up and the firm's assets converted into cash, appellant had on hand money belonging to said estate in the sum of $19,761.85. On

the 28th day of December, 1917, upon appellant's petition, the court, as has been seen, authorized him to invest this sum: first, $4,500 by way of a loan to Bertha L. Listman on real mortgage security; secondly, $14,000 in a mortgage given by Butte-Salt Lake Investment Company to the Merchants' Bank, payable in one year, with interest at the rate of 6 per cent. per annum; thirdly, the remainder, including the aforesaid proposed investments, or either of them, if not made, in United States Liberty Bonds at their market value. The mortgage loan of $4,500 was made. The proposed investment of $14,000 in the Butte-Salt Lake Investment Company mortgage was not made. Meanwhile, and until some time in April, 1918, the remainder of said funds remained on deposit with the Merchants' Bank, when $14,000 worth of Liberty Bonds of the third issue was contracted for by subscription made by appellant through his attorney, but no more than 5 per cent., the inital payment, was paid thereon until the 28th day of May, 1918, when the further sum of $2,800 was drawn from said bank and applied as payment on said bonds. On the 8th day of July, 1918, said bank failed, closed its doors, and its affairs passed into the hands of a receiver, and thereafter the appellant was unable to withdraw the funds belonging to said estate from said Merchants' Bank to enable him to pay the balance owing on said bonds. The evidence further shows that the appellant, some time in 1915, after his appointment as executor of the estate under consideration, took up a residence in the state of California, leaving the business affairs of the estate largely in the hands of his Salt Lake City attorney. After the failure of the Merchants' Bank, said attorney, in order to prevent a forfeiture of the payments theretofore made on said bond subscription, on the 15th day of July, 1918, negotiated for and procured a loan of $10,591.02, the balance owing on said bonds, through the National Copper Bank of Salt Lake City. Said bank thereupon retained said bonds, after payment of said sum due the government, in its hands as security for the payment of a note issued to it by the appellant and signed in his behalf by his said attorney, as aforesaid. The evidence adduced on

behalf of appellant also tends to show that after the district court authorized an investment of estate funds in government bonds, as set forth in its order of December 28, 1918, some delay was occasioned by an investigation as to the worth of the mortgage of the Butte-Salt Lake Investment Company, and before it was finally ascertained and determined that said proposed investment was not advisable. There is also evidence in the record to the effect that both the appellant and his attorney, while conducting the affairs of said estate, acted at all times in good faith, without knowledge that the Merchants' Bank was financially unsound, and that they believed it to be for the best interests of said estate to permit its funds to remain on interest bearing deposit in said bank until a subscription for bonds could be made at a regular bond issue rather than to purchase the same at the market price, which was then above par. On the other hand, the evidence shows conclusively that while said estate funds remained with the Merchants' Bank the appellant was financially interested therein as a stockholder to the amount of $7,000, besides being a depositor or creditor thereof to the amount of about $2,000. It also appears from the record in this case that at any time after the order of the district court had been made directing that the funds of the estate be invested in bonds the same could have been obtained at their market value, and, further, that the estate funds might have been withdrawn from the said bank and used by appellant to pay for the bonds subscribed for by him through his attorney had appellant been disposed to do so at the time, or after, the subscription contract was made, and before said bank failed.

We do not deem it necessary for the purpose of the decision of this court to set forth and discuss in detail all the findings of the district court complained of by appellant. Suffice it to say that the trial court found that on the 28th day of December, 1917, the appellant, as executor of said estate, on his own petition, joined in by the respondents, was directed by the court to invest the residue of the funds remaining in said Merchants' Bank, after making the loan of $4,500 to the respondent Bertha L. Listman, in United States

Liberty Bonds, at their market value, which appellant failed to do; that on January 26, 1918, appellant had on hand funds belonging to said estate in said Merchants' Bank amounting to $15,277.49; that—

"of this amount only $15,250 could be invested in Liberty Bonds, as said bonds could not be purchased in amounts less than $50 each; the difference, or $27.49, was kept in the Merchants' Bank until it failed, and thereafter the receiver of said bank paid to the executor 40 per cent. of said $27.49, or $10.99, which said executor must account for; that the executor is chargeable with interest on said $15,250 from January 26, 1918, to November 26, 1919, at the rate of 4¼ per cent. per annum, that being the rate of interest said bonds would have paid had he invested said funds as ordered by the court; that said interest amounts to $1,188.22; that said executor must account to the estate for the total of $15,250, plus said 40 per cent. of $27.49, or $10.99, plus said interest amounting to $1,188.22, making a grand total of $16,449.21; that the executor received $100 for said estate from the Sons of Herman, a fraternal organization, and which he has not accounted for; that this $100 should be added to said $16,449,21, making a total of $16,549.21; that interest on said amount should be added at the legal rate until paid."

The court then found that the said Merchants' Bank failed on the 8th day of July, 1918, refused to thereafter further transact business as a bank, and that its affairs then passed into, and still remain in, the hands of a receiver, and that the estate funds left in said bank as aforesaid were left there "negligently, and contrary to the express orders of the court," and that the appellant, as executor of said estate, is chargeable therewith. The district court further found that the subscription contract for bonds made by the appellant with the government, the payments made thereon, including the borrowing of money from the National Copper Bank of Salt Lake City, were unauthorized by the terms of the will of Charles W. Listman, deceased, and that said transactions are not chargeable to his estate. The court also made findings that, since the year 1915, the appellant had not been in the state of Utah, except for a very short time upon two occasions, and that he had left the business of said estate to be attended to largely by his attorney; that had the appellant been personally present in Utah and given personal attention

to the business affairs of said estate he would have been able to save the funds of the estate; and, that the conduct of the appellant in that regard was "negligent and careless," and that under all the evidence good reason exists for revoking the letters testamentary of the appellant.

After a careful review of the record we are convinced that the findings of the district court complained of by the appellant find substantial support in the evidence. As pointed out, the court rendered judgment against appellant in the sum of $16,549.21. Included in this amount was $15,250 which the district court found had been lost to the estate through failure and neglect of appellant to invest the same in government bonds as ordered by the court on the 28th day of December, 1917; interest on said sum from January 26, 1918, to November 26, 1919, while the same remained loaned to the Merchants' Bank at the rate of 4¼ per cent. per annum, $1,188.22; $10.99 paid to appellant after said bank failed, being 40 per cent. of $27.49 left therein, which sum could not have been invested in government bonds under the order of the court; and also, $100 paid by the society of the Sons of Herman to appellant, but not accounted for in the report rendered by him to the court. The respondents have assigned and filed cross-errors on this appeal on the grounds that the district court erred in not rendering a judgment in their favor against appellant, as requested by them at the trial, for interest at the rate of 8 per cent. per annum, instead of 4¼ per cent. from December 28, 1917, to and including the 26th day of November, 1919, on the said sum of $15,250 which the appellant failed to invest in bonds as ordered by the court. Also, that the district court erred in refusing to find and decide as requested by respondents that they are entitled to judgment for interest at the legal rate of 8 per cent. per annum on the entire judgment rendered against appellant, $16,549.21 from said 28th day of December, 1917, to November 26, 1919, instead of the rate of 4¼ per cent. per annum.

For the sake of brevity we shall not discuss and consider the merits of the errors assigned by the respective parties

separately, but together in connection with the main questions involved, and those which we think are determinative of the rights of the respective parties to the action.   Counsel for respondents assert that—

"The principal question on this appeal is, whether by neglecting to purchase $14,000 worth of United States bonds, as directed by the order of court of December 28, 1917, and by leaving the money in the Merchants' Bank until July 8, 1918, when it failed, the executor was negligent, and whether that negligence amounts in law to a devastavit."

The appellant contends that he was not negligent in the performance of his duties and in the management of the estate in the particulars complained of by the respondents.   His counsel insist that at all times he acted in absolute good faith, and exercised such skill, prudence, and diligence in the management of the estate as men ordinarily bestow, under similar circumstances, in the management of their own affairs.   They point out that the loss to the estate complained of was the failure of the Merchants' Bank; that the funds of the estate were deposited in said bank in accordance with and under the express sanction of an order of court.   They say, quoting from their brief:

"In this case the testator in his will gave specific directions that the estate funds should be invested in real estate mortgages. The executor, finding himself unable to execute the trust in the manner directed by the will, although under no duty so to do, did petition the court for authority to buy Liberty Bonds. Whether he should so petition was a matter lying in his discretion. The executor, and not the court, was the trustee in fact.   It must be conceded that if he had not petitioned the court there would be no possible theory upon which he could be held liable in this case."

It may well be conceded that when an executor in the discharge of his trust has exercised that degree of care which a prudent person ordinarily exercises in the conduct and management of his own affairs, the law, in case of loss, will hold him immune from personal liability.   He is not      2 an insurer, and if he exercises ordinary care and diligence in the performance of his duties he may not be held for mistake or error in judgment.   It is elementary, however,

that he must not depart from the duties he has undertaken under the provisions of the will of the testator, and thereby cause loss to the trust estate or the beneficiaries under the will, more especially when there is no discretionary power vested under its provisions. R. C. L., vol. 26, § 131.

We do not wish to be understood as holding, by what has been said, that our district courts, while sitting in probate, have no supervising control over trust funds and property belonging to an estate in cases where it is obvious that some modification of the express terms of the trust is necessary to preserve the trust and carry out the manifest purposes of the testator. Cases may arise, and frequently do, in **3** which, by reason of a change of circumstances, and the unusual conditions that have arisen, the intervention and exercise of the equitable powers of the court will be required in order to prevent financial loss and destruction of the trust property. In such cases, when it clearly appears to be necessary, the courts may, and generally do, modify the terms of the trust to such an extent as may be found necessary to prevent loss and destruction of the estate property. *Stephens* v. *Collison*, 274 Ill. 389, 113 N. E. 691, Ann. Cas. 1918D, 559; *Ruggles* v. *Tyson*, 104 Wis. 500, 79 N. W. 766, 81 N. W. 367, 48 L. R. A. 809. No such a case, however, is presented to us on this appeal. In this case the will of the testator specifically directed that the funds under consideration be loaned "upon safe real property security at best rate of interest obtainable with a view of making said loan or loans absolutely secure." With the single exception of a loan of $4,500, the express direction of the testator was not complied with by the appellant. True it is that a petition was filed in which it was represented that to loan money upon safe real property security, as specified for in the will, would be "uncertain, difficult and expensive." It is also made to appear that the court made a finding to that effect and ordered the appellant to deposit the funds of the estate in certain banks of Salt Lake City upon time deposits drawing interest at the rate of not less than 4 per cent. per annum. Again, it appears that subsequently, upon the united application of the appellant

and the beneficiaries under the will, the court "authorized, directed, and empowered" the appellant to purchase with the funds of the estate "United States Liberty Bonds at the market price therefor." Ordinarily, upon such a showing as is made upon the record in this case, we would question the power of the district court to authorize or order a departure from the express provisions of a will directing the way in which trust funds shall be used by the executor. It cannot be that the district court was seriously impressed with the showing made by appellant, that loans on real property in this state would be "uncertain, difficult and expensive." It may be that the court, by reason of the fact that a great war was pending, and the beneficiaries under the will desired an investment of the estate funds in Liberty Bonds, very properly ordered, as it did do, an investment in bonds of the government.

Be that is it may, the appellant did not invest the funds of the estate as directed by the order of the court. Nor do we think there is any good reason assigned by appellant for his failure to do so. At the very time when the court made the order respecting the investment in bonds, the funds of the estate were available for that purpose. For approximately six months after the court directed the investment in bonds appellant permitted, without any investigation, the funds of the estate to remain with a banking institution in which he was financially interested both as a stockholder and a depositor, and, as a result, the amount for which judgment was rendered against him was lost to the estate. We think the court's finding that the appellant's conduct in that regard constituted negligence must be sustained. A more charitable view, under all the circumstances and conditions disclosed by this record, could not have been rightly taken by the trial court. Leaving the funds belonging to the estate in the bank as an interest-bearing deposit would not justify the appellant in charging the loss sustained thereby to the estate, even though it be conceded that the bank had a reputation of being financially sound, and that nothing had been called to appellant's attention to lead him to believe

otherwise. It was his duty to investigate and know the con-
dition of the bank. Common, ordinary prudence would sug-
gest that before trust funds are loaned to a bank or to any
corporation or person on interest-bearing deposit, at least
some degree of care should be exercised to ascertain the finan-
cial soundness and responsibility of the depositary. In the
present instance the appellant took no precautionary steps
to do that. Moreover, he permitted the trust funds to re-
main in a bank in which he was financially interested, in
utter disregard of the expressed wishes of the beneficiaries
and the order of the court directing that they be used other-
wise. That the funds were available at the time for the pur-
poses directed by the court's order, this record is clear, and
no legal excuse whatever was offered for noncompliance with
it. Therefore, the finding of the district court that the ap-
pellant was negligent and that the consequent loss of the
trust funds by leaving them in the Merchants' Bank must
be charged to appellant, and not to the estate, must be sus-
tained.

The district court, over the objection of respondents, found
that on the 26th day of January, 1918, appellant had on hand
funds of the estate available for purchasing bonds in compli-
ance with its order in the sum of $15,250, and upon the theory
that, had its order been complied with by purchasing with
said sum bonds of the government the same would have earned
interest at the rate of $4\frac{1}{4}$ per cent. per annum from January
26, 1918, to November 26, 1919, and judgment for interest
at said rate was rendered against appellant accordingly. By
reason of the court's allowance of only $4\frac{1}{4}$ per cent. per
annum on said sum of the period stated, respondents have
assigned cross-errors on this appeal, and insist that they
should have been allowed the legal rate of 8 per cent. per
annum on said sum for the full time from the 28th day of
December, 1916, or, at least, from January 26, 1918, to No-
vember 26, 1919. In support of their contention, they point
out that the appellant was negligent in failing to perform his
duty by investing the said estate funds in real estate interest-
bearing securities or in government bonds, as directed by the

order of the court; that for nonperformance of his duty the court has allowed appellant the same advantage he would have had by complying with the court's order. As bearing upon the question of interest, we are cited by respondents to the rule laid down in 1 Suth. on Damages (4th Ed.) § 353, which reads:

"If interest is lost by the negligence of the trustee, he is charged with interest, either simple or compound, as may be required to compensate the loss, which may be greater or less according to the degree of delinquency."

Also, 2 Schouler on Wills, Ex'rs, and Adm'rs (5th Ed.) § 1538, where it reads:

"Chancery will compel the executor or administrator to charge himself in his account with interest, and in gross instances with compound interest, where he has abused his trust."

It will be observed that the foregoing rules formulated by the text-writers clearly imply that interest is chargeable against executors in cases only where it is necessary ''to compensate the loss'' or in ''gross instances where he has abused his trust.'' The general rule, however, is, that interest is not chargeable, as a matter of course, against an executor, but may be so charged if the circumstances of a particular case require it. *Estate of Marre*, 127 Cal. 128, 59 Pac. 385; *In re Raleigh's Estate*, 48 Utah, 128, 158 Pac. 705; 2 Church, Probate Law & Prac. (2d Ed.) 1551. In this case it does not appear that the appellant was benefited, or that he had any intention of profiting by not complying with the court's order. It is also quite certain that, had he complied with the order by making an investment in bonds, the estate would have been in precisely the same condition financially with respect to interest earnings as it now is under the judgment of the district court. The actual loss sustained by the estate ought to be the measure of damages, we think, under the facts and circumstances of this case, where the specific direction of the court's order was to invest in bonds that would have earned for the respondents no more than 4¼ per cent. interest per annum. Of course, a case might arise in which an executor, by disregarding the order of the court, could wrongfully divert and use the estate funds for

his own private purposes, and in such a case, when called upon to account he should be required to pay at least simple interest, if not compound interest, as justice may require.

For the reasons assigned we think the judgment of the lower court, as rendered, should be affirmed. It is so ordered. Costs to be recovered by respondents.

WEBER, GIDEON, THURMAN, and FRICK, JJ., concur.