DORIS TRUST CO v. QUERMBACH et al.

No. 6412.  Decided February 2, 1943.  (133 P. 2d 1003.)

*Harley W. Gustin,* of Salt Lake City, for appellants.

*Benjamin Spence* and *O. A. Tangren,* both of Salt Lake City, for respondent.

MOFFAT, Justice.

On April 24, 1940, Doris Trust Company filed a complaint against defendants and appellants, Marie Quermbach, individually and as administratrix of the estate of Mary Ann Pettit, deceased, Fred Quermbach and William Pace, seeking, among other things, to quiet title to Lot 25, Block 2, Bellevue Park Addition to Salt Lake City. The questions had their origin in an alleged contract of sale and purchase of the described property. Termination of the contract, forfeiture of payments made and possession are asked. The relationship was first initiated between Addison Cain and Mary Ann Pettit and has by devious routes dragged along from 1919 until suit was filed.

A general demurrer to the complaint was filed and without appearance of either party when it was called for hearing was overruled. This is assigned as error. If well taken other questions need not be discussed. There are some facts gleaned from the evidence not alleged. Objection was made to the introduction of any evidence and overruled. Other objections were made to specific parts of the evidence. The documentary evidence shows:

1. Addison Cain acquired title to property subject to a mortgage January 28, 1907.

2. February 20, 1917, Addison Cain conveyed by warranty deed to Frances L. Cain, his wife, the property in question as well as other property. This deed was recorded the same date.

3. August 14, 1919, Addison Cain as first party with an unnamed second party agreed to sell and convey and the second party agreed to buy the property in question. The agreement is signed by Addison Cain and Mary Ann Pettit. The agreement was never recorded. Frances L. Cain was not a party to the agreement and did not sign it.

4. Mary Ann Pettit died July 16, 1922, intestate.

5. In August that year, Marie Quermbach, a daughter of Mary Ann Pettit, was appointed administratrix of the estate.

6. June 24, 1924, Addison Cain and Frances L. Cain (wife) conveyed by warranty deed without reference to the outstanding unrecorded contract the property with other property to Doris Trust Company. This deed has never been recorded.

7. May 15, 1928, Frances L. Cain conveyed by warranty deed the property to Doris Trust Company. This deed has not been recorded.

8. On May 15, 1928, Addison Cain assigned to Doris Trust Company all his interest in the Mary Ann Pettit contract. This document has never been recorded.

9. By quitclaim county tax deed, Salt Lake County, pursuant to an order of the County Commissioners made March 6, 1939, vested in Fred Quermbach and Marie Quermbach, his wife, all the title acquired by tax sales for the years 1929, 1930, 1935, 1936 to the property in question. This deed was recorded March 9, 1939.

10. On February 3, 1940, Fred Quermbach and Marie Quermbach transferred the property and other property by quitclaim deed to William Pace.

11. Addison Cain on January 9, 1940, filed in the office of the county recorder a notice stating that:

"Any and all tax payments made on Lot 2, Block 2, Bellevue Park, an addition to Salt Lake City, by Fred Quermbach or Marie Wilson Quermbach whether regular taxes or for a county quitclaim deed have been made in pursuance of an agreement to purchase said property under a bond for deed and no title will pass till said bond for deed is paid in full."

The foregoing is the title story partly from the complaint and partly from plaintiff's proof. This appears to be a suit at law to quiet title. No equitable issues appear for determination. No estoppel is pleaded.

With this thought in view we summarize the allegations of the complaint with the title story added in summary. The complaint alleges the contract provided that Addison Cain agreed to sell and convey and that the second party, supposedly, Mary Ann Pettit, agreed to purchase the property.

The death of Mary Ann Pettit; the appointment of Marie Quermbach, a daughter, as administratrix; the possession of the property by Mary Ann Pettit until her death and possession by Marie Quermbach since; the failure to make regular instalment payments and taxes for the years 1919, 1922, 1929, 1930, 1935, 1936, and 1937; the property was sold to Salt Lake County because of failure to pay taxes on April 5, 1937.

It is further alleged that after title to the property was taken by Salt Lake County, Fred Quermbach and Marie Quermbach secured a tax deed to the property as joint tenants and that on the 3rd day of February, 1940, they transferred the property together with other property to William Pace, who is now the record owner. Up to this point the plaintiff and respondent has pleaded itself out of court.

There are further allegations to be examined. Paragraph 8 of the complaint says in substance that Marie Quermbach and Fred Quermbach

"well knowing the facts to be, that it was the duty of the said Marie Quermbach, as administratrix of the estate of Mary Ann Pettit, deceased, under and in pursuance of the terms of said contract of sale * * * and the obligations required of her as such administratrix, in order to preserve to said estate the title and interest already acquired and to be acquired in said property, to pay the taxes thereon and to perform the other covenants and conditions imposed by said contract of sale, but disregarding said facts and with the intent and purpose of fraudently [fraudulently] and deceitfully attempting to deprive the plaintiff of title to said property, failed to pay the taxes thereon as hereinabove enumerated until such time that said property was forfeited to Salt Lake County * * * nonpayment of taxes, and subsequently thereto and on the 5th day of April, 1937, negotiated with Salt Lake County, to purchase said property by tax deed from said County in the name of herself and husband Fred Quermbach * * * and did obtain a tax deed thereon. * * *"

It is further alleged that Marie Quermbach, Fred Quermbach and William Pace claim some right, title and interest in and to the property adverse to plaintiff. It is also alleged that on or about the 26th day of February, 1940, Doris Trust

Company caused to be served upon Marie Quermbach (whether personally or as administratrix does not appear) a notice in writing of default, arrears and delinquent taxes and forfeiture and termination of the contract; that the notice remains uncomplied with. It is finally alleged that prior to the commencement of the action Addison Cain transferred in writing all of his right in the property and contract of sale.

As to defendant and appellant William Pace and his title to the property, it appears that taxes upon the property were not paid and that title regularly passed to Salt Lake County; that Fred Quermbach and Marie Quermbach purchased from Salt Lake County, and conveyed to William Pace. The regularity of the tax levies and sale are not put in issue. Salt Lake County got good title.

Unless defeated by fraud, the Quermbachs got good title. In any event, they got title and if passed to an innocent purchaser would give him good title. For all that appears from the complaint, William Pace had no notice of any outstanding claim or interest other than that the original title stood of record, as shown by evidence and not by the complaint, in Frances L. Cain, which title passed to Salt Lake County, thence to Quermbachs, then to William Pace. We think the complaint does not state a cause of action against William Pace.

The complaint alleges title to have passed to Salt Lake County because of a tax sale that is not attacked. It is not alleged that William Pace had actual knowledge of the Pettit-Cain contract of sale, or that Marie Quermbach as administratrix had funds with which to protect the interest of the estate of Mary Ann Pettit, deceased. The contract of sale has remained unrecorded. It is not alleged that there was listed in the probate proceedings any equity in the property. It is not alleged that William Pace had any notice either actual or constructive that the plaintiff had any interest in the property, except the possible inference that some time prior to the commencement of the action Addison

Cain assigned the contract to the plaintiff. Whether this was before or after the tax sale is not alleged. The demurrer of William Pace, being a separate demurrer, should have been sustained.

Let us examine the evidence. Does the evidence justify a finding against Pace? Two witnesses testified on behalf of the plaintiff, H. H. Brockholt and Addison Cain. Except the identification of the signature of Mary Ann Pettit, deceased, there was nothing relating to the issues testified to by Mr. Brockholt. No evidence was produced on behalf of the plaintiff or defendants except the documentary evidence hereinbefore referred to and that of Addison Cain.

Referring to paragraph 8 of the complaint hereinbefore referred to, and comparing those allegations with the evidence submitted, presents the question of alleged fraud on the part of Fred Quermbach and Marie Quermbach in acquiring the tax title from Salt Lake County.

Those parts of the contract between Addison Cain and Mary Ann Pettit relating to taxes are as follows:

"Taxes falling due after the date hereof shall be assumed and paid by second party * * *. If second party shall fail to advance money for fire insurance, taxes * * * or any other incidentals or for extras or lien on buildings on above real estate, same shall draw one per cent per month until paid, and must be settled before deed may issue. Any payment, including taxes, and fire insurance, not made the date it is due shall immediately cause interest hereunder to be computed at the rate of twelve per cent during said delinquency."

These allegations are followed by the usual forfeiture provisions found in such contracts.

The terms of the contract required the second party to advance taxes as well as to make the other payments to the first party. Failure to do so would constitute a default; but does it constitute fraud?

There is neither allegation nor proof that the estate of Mary Ann Pettit was possessed of funds to make the required payments either before or after the tax default and

sale. The alleged default is the sum of $461.35. So far as disclosed that may include principal, interest, taxes, insurance "or any other incidentals."

The property was of record in the name of Frances L. Cain until, as alleged in the complaint, it passed to Salt Lake County on the 5th day of April, 1937.

On the 6th day of March, 1939, approximately two years after the alleged sale to Salt Lake County, Fred and Marie Quermbach purchased from Salt Lake County. Assuming as we must for the purposes of this case that the tax sale to Salt Lake County with the antecedents were regular, as plaintiff alleges a period of about two years elapsed during which any one might have purchased from the County and eliminated all the parties to this action. If our premise is correct that it was the duty of the second party to the contract to "advance" the taxes to the first party, it would follow that the first party Addison Cain had the duty of protecting the title to the property he had agreed to sell from passing out of his control by tax sale or otherwise.

Granting the defaults, we cannot say acquirement of the outstanding title was fraudulent, or other than ordinary prudence would dictate. *In re Listman's Est.*, 57 Utah 471, 197 P. 596. There being no fraud on the part of the Quermbachs, their title was good as against the plaintiffs who claim by a chain of title that left plaintiff free to dispose of the property as it chose. Plaintiff having alleged title passed to the County, in the absence of fraud title passed to the Quermbachs and thence to William Pace.

The cause is reversed. Judgment should be entered quieting title in William Pace. Costs to appellants.

LARSON, J., and M. J. BRONSON, District Judge, concur.

WOLFE, Chief Justice (concurring).

I concur but on different reasoning. It is clear from the record that Salt Lake County got good title to this land by

virtue of the tax levy and sale. Marie and Fred Quermbach purchased this land from Salt Lake County and unless defeated by fraud, they got good title. But Marie Quermbach was administratrix of the estate of Mary Ann Pettit who had contracted to purchase this land from Addison Cain. By the terms of this contract she was to advance the money for the payment of the taxes. This of course meant, without quibbling, that there was an obligation to pay taxes. Certain money was advanced, but Marie Quermbach never required Cain to apportion the money nor did she ever check to see that the taxes were paid with the money advanced. I seriously doubt that under these circumstances the Quermbachs could buy this land at a tax sale for their own benefit. However, they did get legal title even though they may have held said title for the benefit of the estate. Thus they could transfer good title to any bona fide purchaser who took without notice of the fraud.

Addison Cain recorded what purported to be a lis pendens on January 9, 1940. (This so-called lis pendens is set out in full by Mr. Justice Moffat in his opinion.) Nearly a month after the notice was filed, Pace purchased this land. It is plaintiff's contention that Pace, by virtue of this so-called lis pendens, had notice of the fraud.

Constructive notice from a record is wholly a creature of statute. No record will operate to give constructive notice unless such effect is given such record by statute. *Overlander* v. *Withers,* Mo. App., 148 S. W. 2d 88. Since notice from a record is a creature of statute, the statute giving it such effect must be complied with. *In re Martina,* D. C., 39 F. Supp. 255; *Newton Finance Corp.* v. *Conner,* 161 Tenn. 441, 33 S. W. 2d 95, 72 A. L. R. 1286.

In this case the recording of the so-called lis pendens is not effective to give notice under the lis pendens statute, 104-5-16, R. S. U. 1933, for no suit was started and the notice failed to state, as required by statute, that a suit was pending.

By virtue of Section 78-3-2, R. S. U. 1933,

128

> "Every conveyance, or instrument in writing affecting real estate, executed, acknowledged or proved, and certified, in the manner prescribed by this title, * * * shall, from the time of filing the same with the recorder for record, impart notice to all persons of the contents thereof; and subsequent purchasers, mortgagees and lienholders shall be deemed to purchase and take with notice."

This notice filed by Cain is not a "conveyance, or instrument in writing affecting real estate" as contemplated by this statute. The instrument which he filed did not purport to affect real estate. The statute refers to instruments such as mortgages, contracts of sale, lease agreements, deeds, etc., and not to self-serving declarations which hint that some unnamed person might claim some indefinite interest in the land. This entry on the records of an instrument which is not entitled by the statute to be recorded is not legally a record (see note 19 A. L. R. 1074) and did not give Pace constructive notice of its contents.

Even if it could be held that Pace had constructive notice of the contents of this instrument, he would not be put on inquiry concerning the Mary Ann Pettit contract with Addison Cain. Cain was a stranger to the title. He neglected to say who claimed an interest in the land or just what this interest was. Even if Pace had had actual notice of the contents of this so-called lis pendens, it would be unreasonable to require him to seek out Cain and inquire as to the nature of the interest claimed. From all that appears of record, Pace was a bona fide purchaser for value without notice and title should be quieted in him.

McDONOUGH, Justice (concurring).

I concur on the ground that under the facts as set out in the opinion of Mr. Justice MOFFAT, appellant, Pace, was a bona fide purchaser. I concur in what is said by Mr. Chief Justice WOLFE relative to the recorded declaration by Addison Cain being inadequate to impart notice to Pace.