2011 UT 26

Mark C. HAIK; William S. Hoge; The Butler Management Group; Marvin A. Melville, as Trustee of the Marvin A. Melville Trust, et al., Plaintiffs, Counterclaim Defendants, Appellees, and Cross–Appellants,

v.

SANDY CITY, Defendant, Counterclaimant, Appellant, and Cross–Appellee.

Sandy City, Third-party Plaintiff, Appellant, and Cross–Appellee,

v.

Lynn Christensen Biddulph and Charles Biddulph, Third-party Defendants.

No. 20090451.

Supreme Court of Utah.

May 10, 2011.

---

⚷231(5)

David C. Wright, John H. Mabey, Jr., Salt Lake City, UT, for Appellant and Cross–Appellee.

Ronald G. Russell, Rodger M. Burge, Salt Lake City, UT, for Appellee and Cross–Appellant.

Justice NEHRING, opinion of the Court:

## INTRODUCTION

¶ 1 This case illustrates the importance of promptly recording a deed to a property right. Sandy City and the Plaintiffs ("Haik Parties") each hold deeds to the same water right. Sandy City recorded an "Agreement of Sale" for the water right in 1977, but did not record the deed until 2004. The Haik Parties purchased the same water right in 2003 and recorded their deed that year. We are asked to determine whether the district court erred when it quieted title in favor of the Haik Parties after concluding that the Haik Parties had first recorded their deed to the water right in good faith. The district court reasoned that the Agreement of Sale did not put the Haik Parties on notice of Sandy City's interest in the water right because it was an executory contract, i.e., there was no way to determine whether the con-

tract was performed and whether the deed to the water right was delivered to Sandy City.

¶ 2 We conclude that the Agreement of Sale put the Haik Parties on record notice that Sandy City had an equitable interest in the water right. Whether record notice of an equitable interest in property defeats another's claim of having subsequently purchased the same property in good faith is a question of first impression. Although record notice of an equitable interest in a water right can, in some circumstances, subvert a claim of having subsequently purchased the same water right in good faith, those circumstances are not present in this case. Accordingly, we hold that the Haik Parties first recorded their deed to the disputed water right in good faith and affirm the decision of the district court.

## BACKGROUND

¶ 3 Sandy City and the Haik Parties hold deeds to the same water right. Sandy City's chain of title is relatively straightforward. In 1974, Harold Bentley conveyed certain property, to which the disputed water right is appurtenant, to Saunders-Sweeney, Inc. About two years later, both Mr. Bentley and Saunders-Sweeney, as grantors, each signed quitclaim deeds that named Sandy City as grantee of the water right. Shortly thereafter, Mr. Bentley, Saunders-Sweeney, and the mayor of Sandy City Corporation signed an "Agreement of Sale" for the water right. The Agreement of Sale was recorded on January 14, 1977, in the Salt Lake County Recorder's Office. Sandy City thereafter received a quitclaim deed conveying the water right, but that deed was not recorded. It was simply kept in a separate file in the Sandy City Recorder's Office.

¶ 4 The Haik Parties' chain of title is a bit more circuitous. In 1978, Saunders-Sweeney designated the property to which the water right is appurtenant as Lot 31 of the Little Cottonwood Subdivision. That same year, Saunders-Sweeney conveyed Lot 31 to Judith Saunders. The deed was recorded. Lot 31 was subsequently conveyed, through intermediate owners, to Lynn Biddulph in 1983. The water right was not reserved in any of these conveyances.

¶ 5 In 1999, Saunders-Sweeney separately conveyed "all of its right, title and interest" in the water right to Ms. Biddulph by quitclaim deed, which was recorded. Shortly thereafter, Ms. Biddulph filed an application with the Utah State Engineer for a permanent change of water, which was approved. In response to the change application, Sandy City wrote a letter to the State Engineer expressing concern "if any activity to expand or further change the water right were to take place," but Sandy City did not claim ownership of the water right or otherwise contest Ms. Biddulph's ownership of the water right. Ms. Biddulph then expended money and effort to maintain the water right and related facilities.

¶ 6 In 2003, Ms. Biddulph conveyed the water right by quitclaim deed to LWC, L.L.C. Shortly thereafter, LWC conveyed the water right by quitclaim deed to Kevin Tolton (one of the Haik Parties). In October 2003, Kevin Tolton then conveyed the water right by quitclaim deed to the Haik Parties as tenants in common. The Haik Parties recorded the deed on December 10, 2003.

¶ 7 Before the water right was conveyed to the Haik Parties, Mark Haik, a professional title examiner, searched the Salt Lake County Recorder's records concerning the water right. Mr. Haik did not locate the 1977 Agreement of Sale because his search started with records beginning in 1983 or 1984. Had Mr. Haik searched back to 1977, he likely would have found the Agreement of Sale.

¶ 8 In 2004, the Haik Parties filed an application with the Utah Division of Water Rights to change the diversion point of the water right. In an effort to oppose the application, Sandy City investigated the water right and located the Agreement of Sale from 1977. Sandy City then asked the Sandy City Recorder to find the referenced water right deed. The city recorder quickly located the original deed in the Sandy City Recorder's Office. At Sandy City's request, the city recorder recorded the deed in April 2004. But when Sandy City sought to update title with the Division of Water Rights, its request was rejected.

¶ 9 The Haik Parties filed an action to quiet title to the water right. Both parties

moved for summary judgment. The district court granted the Haik Parties' motion for summary judgment and denied Sandy City's cross-motion for summary judgment. The district court found that the Haik Parties (1) recorded their deed before Sandy City and (2) purchased the water right in good faith because they did not have notice of Sandy City's unrecorded deed to the water right. The court reasoned that even though the Agreement of Sale referenced the disputed water right, the Agreement of Sale did not put the Haik Parties on record notice of Sandy City's interest in the water right because it was merely an executory contract with "no way to determine whether performance under the agreement actually occurred." Sandy City now appeals. We have jurisdiction under Utah Code section 78A–3–102(3)(j) (Supp. 2010).

## STANDARD OF REVIEW

 ¶ 10 Summary judgment is appropriate only when there "is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law."[1] Because summary judgment involves questions of law, we grant no deference to the district court's ruling and review it for correctness.[2] We may affirm a district court's entry of summary judgment " 'if it is sustainable on any legal ground or theory apparent on the record.' "[3]

## ANALYSIS

¶ 11 The issue in this case is whether the Agreement of Sale put the Haik Parties on record notice of Sandy City's unrecorded interest in the disputed water right. The Haik Parties contend that the Agreement of Sale did not impart record notice because it is merely an executory contract, i.e., it is impossible to know from the text of the Agreement of Sale whether it was executed and whether

the deed was actually delivered. Sandy City contends that the Agreement of Sale imparted record notice because it unambiguously describes a conveyance of the water right to Sandy City. Alternatively, Sandy City contends that even if the Agreement of Sale is an executory contract, it nevertheless put the Haik Parties on record notice that Sandy City possessed an equitable interest in the water right.

¶ 12 It is unclear whether the Agreement of Sale was an executory contract or whether it was fully performed. Nevertheless, we conclude that the Agreement of Sale put the Haik Parties on record notice that Sandy City had an equitable interest in the water right. There are circumstances where record notice of an equitable interest in property may subvert a subsequent purchaser's claim of having purchased the same property in good faith. But those circumstances are not present here for three reasons: (1) the Haik Parties reasonably believed they had a clear and inviolate chain of title to the disputed water right; (2) nearly twenty-seven years had passed since the Agreement of Sale was recorded and Sandy City had still not recorded its deed to the water right; and (3) the Haik Parties' predecessors-in-interest maintained the water right and filed a change application in 1999, yet Sandy City never contested ownership to the water right. Accordingly, we hold that the Haik Parties purchased their deed to the water right in good faith. We therefore affirm the district court's grant of summary judgment in favor of the Haik Parties on these alternative grounds.[4]

## I. THE AGREEMENT OF SALE DID NOT PUT THE HAIK PARTIES ON CONSTRUCTIVE RECORD NOTICE THAT SANDY CITY HAD A DEED TO THE WATER RIGHT

 ¶ 13 Utah is a race-notice jurisdiction.[5] Under Utah's Recording Act and

---

1. UTAH R. CIV. P. 56(c).

2. *Mitchell v. Christensen*, 2001 UT 80, ¶ 8, 31 P.3d 572.

3. *Francis v. State*, 2010 UT 62, ¶ 19, 248 P.3d 44 (emphasis omitted) (quoting *Bailey v. Bayles*, 2002 UT 58, ¶ 10, 52 P.3d 1158); *accord Angel Investors, LLC v. Garrity*, 2009 UT 40, ¶ 38, 216 P.3d 944.

4. Because we affirm the district court's grant of summary judgment in favor of the Haik Parties, we do not address their argument that Sandy City is barred from asserting ownership of the water right under the equitable doctrines of estoppel, laches, and waiver.

Utah's Water and Irrigation Act, a subsequent purchaser for value prevails over a previous purchaser if the subsequent purchaser (1) takes title in good faith and (2) records before the previous purchaser.[6] There is no dispute that the Haik Parties were the first to record their deed to the disputed water right. Thus, the only issue is whether the Haik Parties took title to the water right in good faith.

¶ 14 "To be in good faith, a subsequent purchaser must take [title to] the property without notice of a prior, unrecorded interest in the property."[7] This court recognizes two types of notice: (1) actual notice and (2) constructive notice.[8] Actual notice arises from actual knowledge "of an unrecorded interest or infirmity in the grantor's title."[9] Constructive notice can be either inquiry or record notice. To be on inquiry notice, a person must have "[actual] knowledge of certain facts and circumstances that are sufficient to give rise to a duty to inquire further."[10] But inquiry notice "does not arise from a record."[11] Record notice "results from a record or ... is imputed by the recording statutes."[12] Thus, purchasers of real property are charged with having record notice of the contents of recorded documents.[13]

¶ 15 Because it is undisputed that the Haik Parties had neither actual nor constructive inquiry notice of Sandy City's interest in the water right,[14] the only question is whether the Agreement of Sale put the Haik Parties on constructive record notice that Sandy City possessed an unrecorded deed to the water right.

5. *See Utah Farm Prod. Credit Ass'n v. Wasatch Bank of Pleasant Grove*, 734 P.2d 904, 906 n. 2 (Utah 1986) ("[Utah's] [R]ecording [A]ct is a race-notice statute which requires lack of actual notice *or* of prior recording for a subsequent purchaser to prevail in multiple conveyances of the same land.").

6. Utah's Recording Act provides:
 Each document not recorded as provided in this title is *void as against any subsequent purchaser* of the same real property, or any portion of it, if:
 (1) the subsequent purchaser purchased the property *in good faith* and for a valuable consideration; and
 (2) the subsequent purchaser's document is *first duly recorded*.
 Utah Code Ann. § 57–3–103 (Supp.2010) (emphases added).
 Utah's Water and Irrigation Act provides:
 Every deed of a water right which shall not be recorded as provided in this title shall be *void as against any subsequent purchaser, in good faith* and for a valuable consideration, of the same water right, or any portion thereof, where his own deed shall be *first duly recorded*.
 *Id.* § 73–1–12 (Supp. 2010) (emphases added).

7. *Salt Lake Cnty. v. Metro W. Ready Mix, Inc.*, 2004 UT 23, ¶ 13, 89 P.3d 155.

8. *See id.*

9. *Id.*

10. *First Am. Title Ins. Co. v. J.B. Ranch, Inc.*, 966 P.2d 834, 838 (Utah 1998).

11. *Id.*

12. *Id.* at 837.

13. *See Crompton v. Jenson*, 78 Utah 55, 1 P.2d 242, 247 (1931) ("One who deals with real property is charged with notice of what is shown by the records of the county recorder of the county in which the property is situated."); *see also* Utah Code Ann. § 57–3–102(1) (Supp. 2010) ("Each document [properly recorded] ... shall, from the time of recording with the *appropriate county recorder*, impart notice to all persons of their contents." (emphasis added)).

14. Inquiry notice is not at issue in this case because the Haik Parties did not have actual knowledge of any facts, such as the existence of the Agreement of Sale, giving rise to a duty to inquire further. *See J.B. Ranch*, 966 P.2d at 838 ("[I]nquiry notice arises from knowledge of certain facts and circumstances, not from records."). Had the Haik Parties known of the Agreement of Sale, they would have had actual knowledge about the possible defect in title and would have been on inquiry notice to inquire further. And upon further inquiry, it is likely that the Haik Parties would have discovered Sandy City's deed to the water right. But because the Haik Parties did not have any knowledge of the Agreement of Sale, our inquiry is limited to whether the *contents of the Agreement of Sale* would have imparted notice to the Haik Parties of Sandy City's unrecorded deed to the water right.

*A. Sandy City's Failure to Record Its Deed to the Water Right Deprived the Haik Parties of Notice of the Unrecorded Deed and Made It Ambiguous Whether the Agreement of Sale Had Been Fully Performed. Because of This Ambiguity, We Treat the Agreement of Sale as Executory.*

¶ 16 In Utah, real estate documents filed with the county recorder "impart notice to all persons *of their contents*."[15] A real estate "document" is defined as "every instrument in writing, including every conveyance, affecting, purporting to affect, describing, or otherwise concerning any right, title, or interest in real property."[16] Thus, the Agreement of Sale imparted to the Haik Parties notice of its contents. But what did *the contents* of the Agreement of Sale communicate?

¶ 17 The Agreement of Sale describes the disputed water right both by its certificate number (A–702) and its precise point of diversion. It further states:

> This Agreement of Sale is made . . . this 13th day of January 1977
>
> . . . .
>
> 1. That [Sandy City], for Ten Dollars and other valuable consideration, the receipt of which is hereby acknowledged, agrees to purchase said water right as described above.
>
> . . . .
>
> 5. Payments shall be tendered upon the execution of this agreement and the deed to the above described water right shall be delivered upon receipt of the payment as herein provided.

The Agreement was signed by Harold Bentley as seller, Saunders-Sweeney, Inc. as seller, and Sandy City Corporation as buyer.

¶ 18 The district court concluded that the Agreement of Sale was an executory contract because it was impossible to determine whether the deed to the disputed water right was ever actually transferred to Sandy City. We disagree. The Agreement of Sale is ambiguous as to whether it was executory or whether it was fully performed. On the one hand, certain language can be read to support Sandy City's argument that the Agreement of Sale imparted record notice of a completed sale and transfer of the water deed. Paragraph one states, "[Sandy City], for . . . valuable consideration, the receipt of which is *hereby acknowledged,* agrees to purchase said water right." And paragraph five states, "[p]ayments shall be tendered *upon the execution of this agreement and the deed* to the above described water right *shall be delivered upon receipt of payment* as herein provided." The term "upon" can be read to mean that the deed was conveyed contemporaneously with the execution of the contract.[17] And because the parties executed the Agreement of Sale that same day, it is reasonable to conclude that the Agreement of Sale memorialized *a contemporaneous exchange* of payments and delivery of the deed on January 13, 1977.

■ ¶ 19 On the other hand, the language of the Agreement of Sale supports the Haik Parties' argument that the Agreement of Sale was merely executory. An executory contract is a contract that contemplates that the performance of a contractual duty is to occur in the future.[18] Nothing in the Agreement of Sale proves that the "payments" referenced in paragraph five were ever made, or that Sandy City actually received the deed to the water right. Indeed, the phrases "shall be tendered" and "shall be delivered" can be read to indicate a proposed transaction rather than a completed transaction. Likewise, the term "upon" can be read to mean that the payments would be tendered "very soon after" the execution of the Agreement of Sale.[19] Furthermore, while paragraph one speaks to valuable consideration "the receipt of which is hereby

---

**15.** UTAH CODE ANN. § 57–3–102(1) (emphasis added); *see also J.B. Ranch,* 966 P.2d at 839.

**16.** UTAH CODE ANN. § 57–1–1(2).

**17.** *See* AMERICAN HERITAGE DICTIONARY 1328 (2d college ed. 1985) (defining "upon" as "on").

**18.** *See* David A. Thomas, THOMPSON ON REAL PROPERTY § 96.03(e) (2d ed. 2002).

**19.** WEBSTER'S THIRD NEW INT'L DICTIONARY 2518 (1961) (defining "upon" as "immediately following on" or "very soon after").

acknowledged," paragraph five speaks to "payments" that *"shall be* tendered upon the execution of the agreement" and conditions the delivery of the deed "upon receipt of [those payments]." But it is impossible to determine, based solely on the contents of the Agreement of Sale, whether such "payments" were ever actually made. Accordingly, we conclude that it is ambiguous whether the Agreement of Sale was an executory contract or whether it was fully performed.

¶ 20 Where a party has record notice of a contract but the degree to which the contract has been performed is ambiguous, we will treat that contract as executory. Here, Sandy City recorded the Agreement of Sale in 1977. However, as discussed above, nothing in the recorded Agreement of Sale sufficiently specified whether Sandy City had performed its agreement. Moreover, the degree of any such performance could not be ascertained by the Haik Parties due to Sandy City's failure to record the deed to the water right. Nonetheless, the recorded Agreement of Sale put the Haik Parties on record notice that Sandy City had agreed to purchase the water right at one time—regardless of whether the agreement was fully performed or remained executory. Thus, at the very least, the Haik Parties had record notice of an executory contract regarding the water rights. Therefore, for purposes of record notice, we must treat a contract as executory if it is ambiguous whether it is executory or has been fully performed. This conclusion, however, does not end our inquiry.

*B. The Haik Parties Were on Record Notice That Sandy City Possessed an Equitable Interest in the Water Right When the Agreement of Sale Was Recorded in 1977. Nevertheless, Under the Circumstances Presented Here, the Haik Parties Purchased the Water Right in Good Faith.*

¶ 21 Sandy City contends that even if the Agreement of Sale is an executory contract, it nevertheless put the Haik Parties on record notice that Sandy City possessed an equitable interest in the water right. Sandy City argues that under the doctrine of equitable conversion, "the vendee of an executory land sale contract holds equitable ownership of the property but not legal title." [20] Thus, "[e]ven though the vendor may retain title to the property, that title is effectively held for the benefit of the vendee, to whom it will pass if the contract is carried out." [21] And the vendee "acquires the equitable interest in the property at the moment the contract is created and is thereafter treated as the owner of the [property]." [22] Sandy City argues that like other instruments affecting an interest in real property—such as an option contract, mechanics lien, or mortgage—the Agreement of Sale put the Haik Parties on notice that Sandy City had an equitable interest in the water right, and that notice of this equitable interest defeats the Haik Parties' claim to having purchased the water right in good faith.

¶ 22 We agree that the Agreement of Sale put the Haik Parties on record notice that Sandy City had equitable interest in the water right *at the time the Agreement of Sale was recorded.* But we have not previously addressed whether notice of an equitable interest in property will defeat a subsequent purchaser's claim of having obtained title to the property in good faith. Assuming without deciding that there are circumstances under which record notice of an equitable interest in property may subvert a subsequent purchaser's claim to having purchased the property in good faith, those circumstances are not present here. Thus, we hold that the Haik Parties took title to the water right in good faith.

¶ 23 First, we find it telling that Sandy City recorded the Agreement of Sale in 1977 but failed to record the deed to the water right for nearly twenty-seven years. This fact is particularly relevant given the statutory requirement that water rights be recorded by deed. Utah Code section 73–1–10 pro-

---

**20.** *Cannefax v. Clement,* 818 P.2d 546, 549 (Utah 1991).

**21.** *Id.* at 549–50.

**22.** *Lach v. Deseret Bank,* 746 P.2d 802, 805 (Utah Ct.App.1987).

vides that "[a] water right . . . shall be transferred *by deed* in substantially the same manner as is real estate,"[23] and clearly states that *"[t]he deed must be recorded* in the office of the recorder of the county where the point of diversion of the water is located and in the county where the water is used."[24] Moreover, section 73–1–12 warns that *"[e]very deed of a water right which shall not be recorded* . . . shall be void as against any subsequent purchaser, in good faith and for a valuable consideration, of the same water right, or any portion thereof, where his own *deed* shall be first duly recorded."[25] This statutory language, combined with the fact that Sandy City had not recorded its deed to the water right more than twenty-seven years after the Agreement of Sale was recorded, weighs heavily in favor of concluding that the Agreement of Sale was never executed and the deed never delivered to Sandy City. That a recorded deed will destroy a subsequent purchaser's claim of having purchased the same property in good faith could not be more clear. It falls, therefore, to the grantee of the water right to take responsibility for protecting its legal interests by recording the deed.

¶ 24 Second, we find it important that both the Salt Lake County Recorder's Office and the Utah Division of Water Rights (or "UDWR") showed that the Haik Parties had a clear and inviolate chain of title to the water right. As to the Salt Lake County Recorder's Office, the records show a complete chain of title from Lot 31—the land to which the Haik water right was appurtenant—to the Haik Parties. The records show the following: In 1974, the land that would eventually become Lot 31 was conveyed to Saunders-Sweeney and the deed was recorded. In 1978, the land was conveyed to Judith Saunders and the deed was recorded. In 1983, the land was conveyed to Lynn Biddulph and the deed was recorded. Importantly, the water right was not reserved in any of these conveyances. Utah Code section 73–1–11 states in relevant part:

A water right appurtenant to land shall pass to the grantee of the land unless the grantor:

 (a) specifically reserves the water right or any part of the water right in the land conveyance document;

 (b) conveys a part of the water right in the land conveyance document; or

 (c) conveys the water right in a separate conveyance document prior to or contemporaneously with *the execution of the land conveyance document.*[26]

And in 1999, Saunders-Sweeney separately conveyed "all of its right, title and interest" in the water right to Lynn Biddulph (the Haik Parties' predecessor-in-interest) and the deed was recorded. Thus, under Utah Code section 73–1–11, the Haik Parties had a clear chain of title to the water right unless the right was "convey[ed] . . . in a separate conveyance document prior to or contemporaneously with the execution of the land conveyance document."[27] And the only possible conveyance was the Agreement of Sale. But as we explained above, it is ambiguous whether the Agreement of Sale was performed or was merely an executory contract, particularly since twenty-seven years had passed since the Agreement of Sale was recorded and no deed to the water right had yet been recorded. Thus, it would have been reasonable for the Haik Parties to conclude that the Agreement of Sale was never executed and, therefore, the water right passed to the Haik Parties' predecessor-in-interest as an appurtenance to the land conveyed by Saunders-Sweeney in 1978.

¶ 25 This conclusion is particularly compelling considering that Saunders-Sweeney, a named grantor on the Agreement of Sale, separately conveyed "all of its right, title and interest" in the water right in 1999. Had the Agreement of Sale been performed and the deed to the water right been delivered to Sandy City, it would be reasonable to conclude that Saunders-Sweeney would not have

---

**23.** Utah Code Ann § 73–1–10(1)(a) (emphasis added).

**24.** *Id.* § 73–1–10(1)(b) (emphasis added).

**25.** *Id.* § 73–1–12 (emphasis added).

**26.** *Id.* § 73–1–11(1) (emphasis added).

**27.** *Id.* § 73–1–11(1)(c).

transferred the water right again in 1999. In other words, it would be reasonable to conclude that Saunders-Sweeney did not twice convey the same water right. Likewise, even assuming Saunders-Sweeney did twice convey the same water right—once in the 1977 Agreement of Sale and once in the 1999 conveyance—it would be reasonable to conclude that Sandy City would have contested the 1999 conveyance. Yet when Lynn Biddulph filed a change application for the water right in 1999, Sandy City wrote a letter to the State Engineer that merely expressed concern "if any activity to expand or further change the water right were to take place," but did not claim ownership of the water right or otherwise contest Ms. Biddulph's ownership of the water right.

¶ 26 Likewise, the records from the Utah Division of Water Rights showed a complete chain of title to the water right. Although UDWR records do not impart record notice or warrant or guarantee title to water rights,[28] the fact that the UDWR records corroborate the official Salt Lake County Recorder's Office records weighs in favor of finding that the Haik Parties would have been justified in believing they had a clear and inviolate chain of title to the disputed water right.

¶ 27 Third, we find it persuasive that the Haik Parties and their predecessor-in-interest, Ms. Biddulph, expended money and effort to maintain the water right, and that Sandy City knew Ms. Biddulph filed a change application for the water right, yet Sandy City never asserted its own interest in the water right. Again, if Sandy City had obtained a deed to the water right under the Agreement of Sale, it would be reasonable to conclude that Sandy City would have contested such efforts to maintain the water right. Instead, when Ms. Biddulph filed the change application, Sandy City did not assert ownership of the right, but stated in a letter to the State Engineer that it did "not have any concerns" if the change application "is merely a correction in the point of diversion to reflect historical water use practices." Thus, even with record notice of the Agreement of Sale, it would have been reasonable for the Haik Parties to conclude that Sandy City no longer had an equitable interest in the water right.

## CONCLUSION

¶ 28 We hold that under the facts presented in this case, the Haik Parties were the first to record their deed to the disputed water right in good faith. We therefore affirm the district court's entry of summary judgment quieting title to the water right in favor of the Haik Parties.

¶ 29 Associate Chief Justice DURRANT, Justice PARRISH, Justice LEE, and Judge VOROS concur in Justice NEHRING's opinion.

¶ 30 Having disqualified herself, Chief Justice DURHAM does not participate herein; Court of Appeals Judge J. FREDERIC VOROS, Jr. sat.

28. The UDWR Title Abstract states, "No agency of the State of Utah warrants or guarantees title to certain water rights. The State Engineer's Office serves only as an office of public record.... If an opinion of title assurance is desired, an attorney or other qualified professional should be retained." Likewise, "[c]onstructive notice from a record is wholly a creature of statute. No record will operate to give constructive notice unless such effect is given such record by statute." *Doris Trust Co. v. Quermbach*, 103 Utah 120, 133 P.2d 1003, 1006 (1943) (Wolfe, C.J., concurring). Thus, record notice does not automatically occur simply because a record is made public or must be filed with a government agency. Rather, "[t]he general rule ... is that in the absence of an express declaration in the statute, records and documents filed pursuant to statute do not impart constructive notice." *J.B. Ranch*, 966 P.2d at 839. Here, Utah Code section 73-2-11 provides, "The office of the state engineer is hereby declared to be an office of public record.... Certified copies of any record or document shall be furnished by the state engineer on demand, ... [and] shall be competent evidence, and shall have the same force and effect as the originals." UTAH CODE ANN. § 73-2-11. Because this statute does not clearly evince an intent to give constructive notice, the UDWR records do not impart record notice.