## O'REILLY v. McLEAN et al.
### (UTAH MORTGAGE CO., Intervener).

No. 5411.   Decided November 15, 1934.   (37 P. [2d] 770.)

*Fabian & Clendenin,* of Salt Lake City, for appellant.

*Budge, Parker & Romney* and *James Ingebretsen,* all of Salt Lake City, and *Joseph Chez,* Attorney General, for respondents.

EPHRAIM HANSON, Justice.

On June 12, 1929, Eliza O'Reilly filed suit in the district court of Salt Lake county to recover on a promissory note in the sum of $1,900 and to foreclose a mortgage given to secure said note, covering certain real property situated in Salt Lake county, Utah. The mortgage and note were dated March 31, 1925, and were executed by Edna M. Mc-Lean, who then owned said real property. The foreclosure suit was brought against Edna M. McLean, Utah Lumber Company, Joseph Nelson, and others. Edna M. McLean entered an admission of service and waiver. The Utah

Lumber Company demurred, but upon the overruling of its demurrer did not plead further. All the other defendants defaulted and on September 27, 1929, a decree of foreclosure was entered. No sale, however, took place. On March 29, 1930, one C. W. Perry, on behalf of Eliza O'Reilly, filed an affidavit setting forth that John Gardner and his wife claimed some interest in the real property and should be made parties to the action. On April 19, 1930, on motion of plaintiff, O'Reilly, the findings and decree of foreclosure were vacated and set aside and the Gardners ordered made parties defendant. On May 22, 1930, John Gardner filed his answer wherein he alleged that at sheriff's sale and by sheriff's deed the real property involved had been conveyed to Utah Lumber Company, the sheriff's deed bearing date of July 16, 1929. That on September 30, 1929, the Utah Lumber Company deeded the real property to plaintiff and she in turn by warranty deed conveyed to John Gardner. That the mortgage lien of plaintiff was merged and extinguished by the deed to Gardner.

To the answer of Gardner plaintiff filed a reply alleging that the deed which Gardner obtained from plaintiff was obtained without consideration and through fraud and deceit in that plaintiff was eighty-five years old, feeble, and was mentally incompetent and incapable of contracting at the time the deed was procured. On August 15, 1930, the intervener and respondent Utah Mortgage Company filed its complaint in intervention in which it alleged that about March 4, 1930, John Gardner agreed to sell the said real property involved in this action to intervener. That an abstract of title to said real property, certified to April 22, 1930, was furnished it, from which abstract it appeared that on June 7, 1926, an action to foreclose a mechanic's lien on this property was filed by the Utah Lumber Company in which the present plaintiff O'Reilly, Edna McLean, and Joseph Nelson were defendants. A judgment of foreclosure was entered and said property sold by the sheriff of Salt

Lake county, and a sheriff's deed thereto was issued to Utah Lumber Company. That on September 29, 1929, the Utah Lumber Company conveyed said property to Eliza O'Reilly. That the abstract further showed the commencement of plaintiff's foreclosure action on June 12, 1929. That the abstract did not disclose any other proceedings under said decree of foreclosure. That it appeared from the abstract that Eliza O'Reilly had conveyed said property by warranty deed to John Gardner, under date of March 13, 1930, and that on April 22, 1930, said Gardner had a good, clear, and unincumbered title to said property. That intervener relied on the facts and conditions disclosed by the abstract, and was a bona fide purchaser for value without notice or knowledge of the setting aside of said foreclosure decree. Intervener further alleged that Gardner purchased said property from Eliza O'Reilly relying on her title and upon the merging of the mortgage interest with the legal title obtained from the Utah Lumber Company, and her deed conveyed to him all the title and interest vested in her at the time it was executed and delivered. That Gardner paid a good and valuable consideration which has been retained by plaintiff, and plaintiff is estopped to assert any rights under said mortgage. That Gardner was in possession of said premises when said deed to him was executed and has ever since been in possession, and that intervener is now sole owner in possession of said premises.

On November 14, 1930, Eugene Giles was appointed guardian ad litem of plaintiff and substituted as plaintiff. On March 10, 1931, the Continental National Bank & Trust Company was appointed general guardian of Eliza O'Reilly and substituted as plaintiff. In its answer to the complaint in intervention, said Bank & Trust Company put in issue the allegations of said complaint and alleged as a further defense the execution of said mortgage by Edna M. McLean to plaintiff; that the deed procured by Gardner from plaintiff was procured without consideration and by fraudulent means when plaintiff was eighty-five years of age, feeble

in mind and body, incapable of comprehending, and incompetent. That Gardner and intervener knew or should have known of plaintiff's condition and they conspired together to procure said property.

Intervener's reply put in issue the affirmative matter in said answer. During the progress of the trial, the court allowed the plaintiff to amend her answer to the complaint in intervention so as to allege that if Gardner procured said deed from plaintiff, it was obtained in consideration of his agreement to assume and pay the said mortgage held by plaintiff, and that intervener, if it purchased the property from Gardner, agreed to assume and pay said mortgage indebtedness.

The trial court found the issues raised by the complaint in intervention, and plaintiff's answer thereto, in favor of intervener. Judgment was entered for plaintiff against Edna M. McLean for the amount owing on the note sued upon, but the title to the real property covered by plaintiff's mortgage was decreed to be in intervener, free and clear of all claims of plaintiff and of Gardner.

The assignments of error present two questions: First, Was Eliza O'Reilly, at the time she conveyed the real property in question incompetent to execute the deed of transfer? Second, Was the intervener, Utah Mortgage Company, a bona fide purchaser of said real property, "either by reason of want of knowledge of what had gone before or by reason of estoppel or merger"?

This is an equity case. We have examined the evidence and are convinced that the trial court's finding that Eliza O'Reilly was not incompetent at the time she executed and delivered the deed to Gardner is supported by a clear preponderance of the evidence. Plaintiff's witnesses who testified on the question of incompetency were Dr. Root, her physician, C. W. Perry, who lived with her, and Eugene Giles, vice president of the bank with which she did her

banking business. It is true that Dr. Root testified that she was of unsound mind in March, 1930, and that this condition had existed for seven or eight years. But it is evident from the whole of his testimony that her unsoundness of mind simply consisted of an inability to recollect and a straying of the mind from the subject of conversation. He admitted, on cross-examination, that she "understands what you say and has all the time, and evidently understands all she says." During all of this time she comprehended the amounts of the doctor's charges and wrote checks in payment thereof. While the doctor testified generally of her unsoundness of mind in March, 1930, he did not express any opinion as to her mental condition on the date the deed was executed. His testimony that she had been of unsound mind for seven or eight years prior to the trial is discredited by the evidence of the other witnesses which shows conclusively that she had been carrying on her business affairs during that time intelligently and at least on a par with the average person. It is clear from Perry's testimony that he did not consider her incompetent and that his assisting her in her business dealings arose out of her physical feebleness, incident to old age and rheumatism, and not out of any consideration of mental unsoundness. She transacted her own business, even when he was with her, and when it was contemplated that a conveyance was to be made to Gardner, he, Perry, stated he would have Mrs. O'Reilly make the deed.

The evidence of Mr. Giles fails to show incompetency. While he testified that her mental condition was very bad in March, 1930, yet, it appears from his testimony as a whole that her condition was one of forgetfulness and not of incompetency. She transacted numerous items of business with him. During the period between May 28, 1929, and March 5, 1931, she signed forty-four checks, all of which were honored at Mr. Giles' bank. She made her deposits and was very particular to have the deposit slips show on what account the various sums had been received by her.

While the evidence shows Mrs. O'Reilly to be eighty-six years of age, no presumption of incompetency can arise from that fact. 18 C. J. 428; *Leonard* v. *Shane*, 182 Iowa 1134, 166 N. W. 373. Further, "it is presumed that the grantor in a deed was competent to execute it at the time of its execution and the burden of proving incompetency is on the person alleging." 18 C. J. 428. This court in the case of *Hatch* v. *Hatch,* 46 Utah 218, 148 P. 433, 438, approved the following language from the case of *Teegarden* v. *Lewis, Adm'r*, 145 Ind. 98, 40 N. E. 1047, 44 N. E. 9:

"In ordinary contracts the test is, 'Were the mental faculties so deficient or impaired that there was not sufficient power to comprehend the subject of the contract, its nature and its probable consequences, and to act with discretion in relation thereto, or with relation to the ordinary affairs of life?'"

The court further holds that section 4001, Comp. Laws Utah 1907, now 102-13-20, R. S. Utah 1933, does not change this test.

Without discussing in detail the evidence of intervener bearing upon Mrs. O'Reilly's competency at the time the deed was executed, suffice it to say that in our opinion the court's finding that she was of sound mind and was capable of knowing and did know what she was doing is in accord with the preponderance of the evidence. Since we hold that the evidence is sufficient to sustain the finding of Mrs. O'Reilly's competency at the time the deed was executed and delivered, we refrain from passing upon the question discussed by both parties in their briefs as to whether the deed of an incompetent is voidable when the property has passed by proper conveyance to a bona fide purchaser for value.

The abstract of title introduced in evidence showed that on March 31, 1925, Edna M. McLean was the owner of the property in question and on that date she executed and delivered to plaintiff the mortgage sued upon in this action.

She thereafter conveyed legal title to Joseph Nelson. An action to foreclose a materialman's lien on this property for materials furnished between April 8, 1925, and May 19, 1925, was brought by the Utah Lumber Company June 7, 1926, against McLean, Nelson, and the plaintiff herein, which resulted in the sale of said property at sheriff's sale and the issuance of a sheriff's deed to the Utah Lumber Company June 21, 1929. On June 12, 1929, plaintiff commenced this action and a judgment of foreclosure was entered September 27, 1929. No sale under the judgment was ever made. On September 20, 1929, the Utah Lumber Company quitclaimed its interest to Mrs. O'Reilly. The abstract further showed a warranty deed from Mrs. O'Reilly to Gardner dated March 13, 1930, and a warranty deed from Gardner to intervener dated April 25, 1930. Evidence outside the abstract showed that on April 19, 1930, upon motion of Mrs. O'Reilly, the findings of fact and decree in this case were vacated and set aside and John Gardner and his wife ordered made parties defendant. Intervener herein had no knowledge or notice of the setting aside of said findings and decree. The abstract, at the time intervener's attorney first examined it, showed the transactions to and including the time of the foreclosure decree entered September 27, 1929. The attorney advised intervener that plaintiff's equitable estate under her mortgage merged with the legal title acquired by plaintiff when she obtained the deed from the lumber company and the mortgage thus became extinguished. The abstract was thereafter continued to March 14, 1930, and then showed the warranty deed from plaintiff to Gardner dated and recorded March 13, 1930. It appears, however, that the abstract was not submitted to intervener's attorney for a final opinion until about April 28, 1930, being then continued to April 22, 1930, and also containing a certified entry showing that Gardner had become bankrupt and that an order discharging him from all provable debts and claims had been entered by the federal court.

It is claimed by intervener that there was a merger of the equitable title held by plaintiff under her mortgage with the legal title acquired by her under her deed from the Utah Lumber Company. This court in the case of *Chausse* v. *Bank of Garland*, 71 Utah 586, 268 P. 781, 783, states the general rule as to merger by quoting from 2 Jones on Mortgages (8th Ed.) § 1080, p. 508, as follows:

"Where a mortgage incumbrancer becomes the owner of the legal title, or of the equity of redemption, a merger will not be held to take place if it be apparent that it was not the intention of the owner, or if, in the absence of any intention, the merger would be against his manifest interest."

The same rule is expressed in 19 R. C. L. 484, as follows:

"Ordinarily when one having a mortgage on real estate becomes the owner of the fee the former estate is merged in the later, but if it was the intention to keep the mortgage alive, or, if it is to the interest of the mortgagee, and it can be done without prejudice to the rights of the mortgagor or third persons, the doctrine of merger, as between them, will not apply."

Devlin on Deeds (3d Ed.) § 1332, says:

"Where such intention is not expressed, the court must endeavor to ascertain it by the circumstances connected with the transaction or must indulge in some presumption by which prima facie its existence may be determined."

We are of the opinion there was no intention to effect a merger at the time Mrs. O'Reilly acquired legal title by obtaining the quitclaim deed from the Utah Lumber Company on September 20, 1929. The evidence shows that she was one of the defendants in the action brought by the Utah Lumber Company to foreclose its materialman's lien and under which action it obtained the sheriff's deed. Before the sheriff's deed issued to the lumber company, plaintiff commenced the present action, still claiming her mortgage lien on the property, notwithstanding judgment in the lien foreclosure suit had been entered against her. After obtaining the deed from the lumber company, she continued

her present action to judgment, thereby evidencing an intention inconsistent with a merger. It further conclusively appears that when Gardner entered into negotiations with intervener for the sale of the property to the latter in March, 1930, more than five months after plaintiff obtained the said deed from the lumber company, the plaintiff still was claiming under her mortgage for intervener was then informed by Gardner that he was paying off the mortgage and that intervener would have to assume this mortgage in the purchase. Later he informed intervener that plaintiff wanted her mortgage paid rather than assumed, and intervener agreed to pay it. It is clear, therefore, that neither plaintiff nor Gardner considered that a merger of the equitable title of plaintiff had been effected by the acquisition of the legal title by plaintiff under the deed from the Utah Lumber Company. Their intention to keep the mortgage alive and effective is clearly and expressly manifested. Consequently no merger took place. *Chausse* v. *Bank of Garland*, supra.

It is contended, however, that when plaintiff gave Gardner a warranty deed March 13, 1930, this conclusively established the merger as to intervener, it being an innocent purchaser for value without notice as to the actual transactions between plaintiff and Gardner. Upon this phase of the case it is not necessary for us to decide whether intervener could rely upon the records of the county recorder as evidencing a merger where such record disclosed that plaintiff, a mortgagee, had acquired legal title and subsequently had given a conveyance containing warranties against incumbrances, for in our opinion the evidence shows that intervener had information, aside from the record, which put it upon notice and inquiry and precluded it from relying solely upon the record.

When intervener's attorney first examined the abstract of title, the deed from plaintiff to Gardner did not appear therein. It had not then been executed. His first opinion

is dated March 8, 1930, and the deed is dated March 13, 1930. He could not then be relying upon the warranties in plaintiff's deed to Gardner. The abstract then disclosed that plaintiff had taken judgment of foreclosure in this action and that such judgment was entered approximately a week after she had obtained the deed from the Utah Lumber Company, which was some evidence that a merger had not been intended. Notwithstanding this, he advised that the taking of the legal title from the Utah Lumber Company by plaintiff effected a merger and thus the plaintiff's mortgage lien did not incumber the title. It is but fair to the intervener's attorney to say that he had no knowledge of anything bearing upon the question aside from what the abstract itself actually disclosed. Upon this advice intervener thereafter assumed that the mortgage need not be further considered; that "whatever was necessary" to clear the title "had been done." The attorney raised other objections to the title which were later cleared. In the course of the negotiations, the abstract was continued to March 14, 1930, and then disclosed plaintiff's deed to Gardner and a money judgment against Gardner. While it does not affirmatively appear, it is fair to infer that Gardner, in order to clear the lien of the judgment against him, informed intervener that he had taken bankruptcy, for thereafter considerable investigation was made into the matter of his bankruptcy and this delayed the closing of the deal for more than a month. After the abstract thus disclosed the warranty deed from plaintiff to Gardner and the judgment against Gardner, and while the bankruptcy matter to clear this judgment was being investigated, Gardner informed intervener that plaintiff was then relying on her mortgage. Mr. Rasmussen, president of intervener, testified as follows:

"Finally our attorney reported that the matter was all O. K., except the bankruptcy proceeding, and in the meantime while Gardner was waiting for this, he said the lady, whoever it was, I don't know whether he mentioned the name or not,—had decided she wanted her money instead of us assuming the mortgage she wanted to have on in the first place."

He further testified that at the first conversation with Gardner early in March, Gardner said he owed $2,000; "that the lady had a mortgage on there and that was what he was paying off." "We agreed to assume the mortgage, pay him $1,000 in stock and lend him $500 to pay the taxes, interest," etc. He further testified that "after we had agreed to buy it he (Gardner) said the party who had the mortgage wanted the money and we agreed to pay it." Mr. Gardner wanted to know if that would interfere with the deal, if she wanted the money."

Some time afterwards, but before the deal was closed, Mr. Rasmussen testified, "Gardner said he had paid her, had borrowed the money and said he had paid her and had the deed." "When Gardner told us he had borrowed the money some place and paid the mortgage we took it for granted that he had." No inquiry of any kind was made by intervener to determine whether the mortgage was in fact paid. No effort was made to talk to plaintiff about it. Intervener relied solely upon Gardner's word that he had paid the mortgage knowing all the time, through Gardner, that plaintiff was still claiming under her mortgage and that Gardner was obligated to pay it. Intervener had not known Gardner at all prior to this transaction. It knew it had to assume or pay the mortgage in the deal as Gardner was unable to pay it and agreed to make him a loan of $500 on its stock, given him in this deal, so as to furnish him money to pay delinquent taxes and interest. Intervener knew that Gardner had just taken bankruptcy, his discharge having been entered at about the time he delivered the deed to intervener. Intervener, therefore, knew something of Gardner's financial affairs. While, of course, the fact that he was borrowing from intervener on the stock involved in the transaction and the further fact that he had just previously become so insolvent as to become a voluntary bankrupt, and thus had turned what unexempt property he may have had over to the bankruptcy court, would not of itself preclude the possibility of his being able to borrow $2,000 to pay off this mortgage,

yet, to say the least, these facts ought to have had some substantial bearing upon the advisability of intervener relying on his statement that he had borrowed money and paid the mortgage. Certainly these facts should be considered in determining whether intervener acted as a reasonably prudent person would have acted under the circumstances, in so far as making some effort to ascertain whether the mortgage was in fact paid is concerned. In his negotiations with plaintiff, Gardner had assumed plaintiff's mortgage and agreed to pay it. It is admitted that the mortgage was never paid and the trial court so found. When he obtained the deed, nothing was paid, but he promised to pay plaintiff what he owed her. Having agreed to pay the mortgage and not having paid it at the time he took the deed, the covenant of warranty in the deed against incumbrance would not include such mortgage. Tiffany on Real Property, vol. 2, p. 1689.

It is clear from all of the evidence, as above outlined, that when plaintiff gave the deed to Gardner, it was not intended thereby to effect a merger, or that the mortgage should come within the purview of the warranty against incumbrances contained in the deed. Gardner was still obligated to pay the mortgage and advised intervener that the mortgage still existed and that the mortgagee wanted her money. It is our opinion also that under this evidence intervener cannot be said to be an innocent purchaser without notice. We think the evidence shows that intervener had such information as would put an ordinarily prudent person upon inquiry.

There is no conflict in the evidence bearing upon this question and all such evidence came solely from intervener's own agents as heretofore outlined. Having sufficient information to put it upon inquiry, it was intervener's duty to make such investigation and it is charged with the knowledge which it would have thus obtained. This court in the case of *Lawley* v. *Hickenlooper*, 61 Utah 298, 212 P. 526,

530, approved the following language from the case of *Wood* v. *Carpenter*, 101 U. S. at page 141, 25 L. Ed. 807.:

"Whatever is notice enough to excite attention and put the party on his guard and call for inquiry is notice of everything to which such inquiry might have led. When a person has sufficient information to lead him to a fact, he shall be deemed conversant of it."

Intervener could not rely on Gardner's statement that he had paid the mortgage and let the matter rest there. Devlin on Real Estate, vol. 2, § 742, uses the following language:

"Where the grantor says that his title has been defective or has been encumbered, the purchaser has received sufficient information to put him upon inquiry, and the fact that the grantor adds that his title has been made perfect, or the encumbrance has been removed, will not relieve the purchaser from making inquiry, and determining this fact for himself.

"If a purchaser is informed by his grantor that there is a mortgage upon the property, but that the mortgage has been satisfied, and he acts upon this statement without making further inquiry, he does so at his own peril. Before taking his deed, he should have endeavored to ascertain the truth of the statement from the mortgagor."

This court in the case of *Le Vine* v. *Whitehouse*, 37 Utah 260, 109 P. 2, 9, Ann. Cas. 1912C, 407, quotes with approval from 2 Pom. Eq. Jur. (3d Ed.) 601, as follows:

"When, however, the grantor, vendor, or mortgagor admits that his title was defective or incumbered, or that there was some outstanding claim upon or equity in the property, or makes any other communication which, unexplained, would constitute an actual notice, but adds a further declaration to the effect that such defect has been cured, or incumbrance removed, or claim of equity rescinded and destroyed, the purchaser, according to the weight of authority, is not warranted in accepting and relying upon this explanation or contradiction; the information obtained under such circumstances and from such a source is sufficient to put a prudent man upon an inquiry. The reason of this is plain. The informant is under a strong personal interest to misrepresent or conceal the real facts. While the former branch of his communication is made against his interest, and is therefore more likely to be true, the latter part is in conformity with his personal interest, and is essentially untrustworthy."

The case of *Fruth* v. *Bolt*, 39 S. D. 351, 164 N. W. 105, 106, cited by appellant, seems to us to be directly in point. There the plaintiff, as administrator of one Hall, deceased, brought suit to foreclose a mortgage executed by defendant Bolt. Some time after executing the mortgage, Bolt conveyed by warranty deed to Hall and Hall conveyed back to Bolt by warranty deed. Bolt later conveyed by warranty deed to defendant Hulett Land & Cattle Company. It was claimed that the deed from Bolt to Hall and from Hall to Bolt merged the legal title free of said mortgage and the Hulett Land & Cattle Company, being a bona fide purchaser, also took title clear of said incumbrance. But the court held that there was no merger, it appearing that defendant Bolt, after the reconveyance to him, had given a second mortgage reciting that it was subject to Hall's mortgage. The court says:

"The reference contained in this [second] mortgage to the first mortgage was sufficient to put a prudent person upon inquiry, and, had such inquiry been pursued with a reasonable degree of diligence, it would have been learned that the first mortgage debt had not been paid."

The Hulett Land & Cattle Company had no knowledge of this second mortgage or its recital referring to the first mortgage, but it was held to have constructive notice thereof since it was recorded. Consequently, it was not a bona fide purchaser without notice. This case was cited with approval in the case of *Detroit Trust Co.* v. *Detroit City Service Co.*, 262 Mich. 14, 247 N. W. 76, at page 84.

In the case of *Ebling Brewing Co.* v. *Genaro*, 189 App. Div. 782, 179 N. Y. S. 384, 386, one Dennison deeded to Augusto E. Gennaro, who gave back a purchase-money mortgage for $1,000 to defendant Dennison. On the same day Augusto E. Gennaro conveyed to Eugenia Gennaro, who mortgaged to plaintiff. Neither the deed to Eugenia Gennaro nor the first mortgage was recorded until after plaintiff recorded its mortgage. The lower court held plaintiff was bound to investigate the unrecorded deed in its chain of

title, and if it had done so, it would have had notice of the first mortgage as the deed recited it was given subject thereto. The appellate court held this was error, but used the following language:

"Not only was the purchase-money mortgage to defendant Dennison unrecorded, but the conveyance to plaintiff's mortgagor was also unrecorded. The conveyance contained a recital that it was subject to a purchase-money mortgage. If the conveyance had been recorded, plaintiff would therefore have had constructive notice of the recital, and consequently that it was subject to a purchase-money mortgage for $1,000. This notice would have placed on plaintiff the duty of investigating, and would have led to defendant Dennison's mortgage. Plaintiff then could not have proceeded in good faith to take his mortgage to the detriment of the defendant Dennison, and the recording law would have afforded it no protection."

In the case of *Taylor* v. *Mitchell,* 58 Kan. 194, 48 P. 859, 860, Taylor conveyed to Mitchell and Mitchell gave Taylor a mortgage for $3,500 to secure part of the purchase price. The deed was recorded but the mortgage was not recorded until after several subsequent conveyances and mortgages had been executed and recorded. Mitchell conveyed to a water company. This deed contained a recital, by way of exception to the covenant against incumbrances, as follows: "Except a mortgage to O. B. Taylor for $3,500, which second party is to pay off." Taylor brought suit against the subsequent grantees and incumbrancers to foreclose his mortgage. They pleaded ignorance of the mortgage on account of the failure to record it. The court held that the recital in the deed referring to Taylor's mortgage gave notice of the mortgage and defendants thereby had knowledge thereof, the recording of the deed under the recording statutes imparting to every one notice of its contents. Defendants were charged with constructive notice of Taylor's mortgage. The court further says:

"There is no force in the suggestion that the defendants were at liberty to presume from the language of the recital in this deed that the grantee had discharged its obligation under the assumption clause to pay off the Taylor mortgage. It was their duty, in order to ac-

quit themselves of laches, to learn as a fact whether such had been done."

In the cited cases the subsequent purchaser had constructive notice of the mortgage under the recording statutes by reason of certain recitals in the instruments which were recorded but to which the mortgagee was not a party. In the instant case the intervener had actual notice of the mortgage and that it had not been paid through information furnished it by Gardner, the very person who was obligated to pay that mortgage. The effect of actual notice should not be less effective than constructive notice. If a purchaser is bound to act upon information constructively obtained, he must also be bound to act upon information received through actual notice.

We are of the opinion, therefore, that the trial court erred in holding that intervener was a purchaser without notice. Holding, as we do, that intervener was put upon notice and so had the duty of making proper inquiries, it naturally follows that intervener, being charged with knowledge of the facts which such inquiry would have disclosed, cannot rely upon an estoppel in this case.

The judgment of the lower court is reversed with instructions to reframe its findings of fact and conclusions of law in conformity with the views herein expressed and enter judgment accordingly in favor of plaintiff. Appellant to recover costs.

STRAUP, C. J., and ELIAS HANSEN, FOLLAND, and MOFFAT, JJ., concur.