**FIRST AMERICAN TITLE INSURANCE COMPANY, a California corp., Plaintiff and Appellee,**

v.

**J.B. RANCH, INC., a Texas corp., Pace Ranches, a partnership, Lucile H. Pace, Sidney M. Pace, and Joseph S. Pace, Defendants and Appellant.**

No. 960530.

Supreme Court of Utah.

May 12, 1998.

Bruce A. Maak, Ronald G. Russell, Jeffrey J. Hunt, Salt Lake City, for plaintiff.

Mark O. Morris, Daniel E. Garrison, Salt Lake City, for J.B. Ranch.

Mark A. Hermundstad, Grand Junction, for the Paces.

HOWE, Chief Justice:

## INTRODUCTION

J.B. Ranch, Inc., appeals from the trial court's order granting its insurer, First American Title Insurance Company, summary judgment. J.B. Ranch contends that First American had a duty to defend it in an action brought against it by Grand County, in which the county asserted the existence of public roads across J.B. Ranch's property. We must decide whether road maps filed with the county clerk and not the county recorder constitute "public records" as defined by the title insurance policy issued to J.B. Ranch.

## BACKGROUND

The facts of this case are largely undisputed. However, because this is an appeal from an order granting First American summary judgment, any disputed facts are stated in a light most favorable to J.B. Ranch.

On February 6, 1984, J.B. Ranch purchased land located in both Grand County and San Juan County, Utah (hereinafter "the Ranch"). In conjunction with this purchase, First American issued a $2,000,000 title insurance policy to J.B. Ranch. Under the terms of the policy, First American was required to defend J.B. Ranch in the litigation of any claims adverse to its title. Schedule B of the policy, however, excepted "[e]ase-ments, claims of easement or encumbrances which are not shown by the public records" from coverage under the policy. The policy further defined "public records" as "those records which by law impart constructive notice of matters relating to said land."

Shortly after J.B. Ranch purchased the Ranch, the Grand County Commission sent it a letter claiming that certain public roads traversed the Ranch and that J.B. Ranch could not lawfully obstruct public access to those roads. There were no documents filed or recorded with the Grand County Recorder's Office that showed the existence of these public roads on the Ranch. However, in 1978, the county had filed some class "D" road maps with the county clerk's office which indicated that certain roads on the Ranch were county roads. On February 11, 1991, over seven years after sending the claim letter to J.B. Ranch, Grand County filed a declaratory judgment action against J.B. Ranch seeking a judgment declaring that certain roads located on the Ranch were public roads. On May 15, 1992, J.B. Ranch sent a notice of claim and tender of defense to its insurer, First American. However, First American denied coverage of the claim and refused to defend J.B. Ranch in the litigation. J.B. Ranch nevertheless successfully defended the Grand County lawsuit at its own expense and without First American's assistance.

After the Grand County lawsuit was concluded, J.B. Ranch again requested that First American reimburse it for defense expenses that amounted to $279,878. First American refused coverage and instead filed this declaratory judgment action against J.B. Ranch. First American sought a judgment declaring that it had no duty under its policy to defend J.B. Ranch in the Grand County lawsuit. J.B. Ranch then counterclaimed against First American seeking recovery of its expenses in defending the Grand County lawsuit.

First American moved for summary judgment in the court below asserting that the Grand County litigation was excepted from coverage under the insurance policy. J.B. Ranch opposed the motion and filed affidavits averring that class "D" road maps on file

in the Grand County Clerk's Office since 1978 showed public roads traversing the Ranch and that First American's agents had requested copies of such maps on past occasions.

The trial court ultimately granted First American's motion holding that the class "D" road maps were not public records that imparted constructive notice under Utah law. The court thus concluded that the Grand County litigation was excepted from coverage under schedule B of the First American insurance policy.

J.B. Ranch appeals contending that the trial court erred in granting First American summary judgment and holding that the First American insurance policy did not cover Grand County's claims against J.B. Ranch. It argues that (1) the court failed to properly construe the policy and coverage exceptions in favor of coverage; (2) the policy's definition of "public records" includes records that imparted inquiry notice to First American of Grand County's claims; and (3) class "D" road maps on file with the county clerk's office pursuant to Utah Code Ann. § 27–12–26 are public records that were intended to impart constructive notice to all persons of their contents. We address each of these contentions in turn.

## STANDARD OF REVIEW

A party is entitled to summary judgment only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Utah R. Civ. P. 56(c); *Clover v. Snowbird Ski Resort*, 808 P.2d 1037, 1039 (Utah 1991). Furthermore, "[q]uestions of contract interpretation not requiring resort to extrinsic evidence are matters of law, and on such questions, we accord the trial court's interpretation no presumption of correctness." *Zions First Nat'l Bank v. National Am. Title Ins. Co.*, 749 P.2d 651, 653 (Utah 1988) (citations omitted).

## ANALYSIS

### I. RULES OF CONSTRUING INSURANCE CONTRACTS

J.B. Ranch first contends that the trial court erred in not construing the insurance policy at issue against its insurer, First American, and in favor of coverage. It asserts that a court is required to construe all insurance policies against the insurer. We disagree.

First American correctly points out that unless the language of an insurance contract is ambiguous or unclear, the court must construe it according to its plain and ordinary meaning. In *Alf v. State Farm Fire & Cas. Co.*, 850 P.2d 1272 (Utah 1993), we stated that "[a]n insurance policy is merely a contract between the insured and the insurer and is construed pursuant to the same rules applied to ordinary contracts." *Id.* at 1274 (footnote omitted); *see also Nielsen v. O'Reilly*, 848 P.2d 664, 665 (Utah 1992) (stating that "the terms of insurance contracts . . . are to be interpreted in accordance with their usually accepted meanings and should be read as a whole, in an attempt to harmonize and give effect to all of the contract provisions"). In sum, "if a policy is not ambiguous, no presumption in favor of the insured arises and the policy language is construed according to its usual and ordinary meaning." *Alf,* 850 P.2d at 1274 (footnote omitted).

Moreover, contrary to J.B. Ranch's assertion, the foregoing rule also applies to policy provisions excepting certain losses from coverage. It is well settled that an " 'insurer may exclude certain losses from coverage if it uses "language which clearly and unmistakably communicates to the insured the specific circumstances under which the expected coverage will not be provided." ' " *Id.* at 1275 (quoting *Village Inn Apartments v. State Farm Fire & Cas. Co.*, 790 P.2d 581, 583 (Utah Ct.App.1990) (quoting *Wagner v. Farmers Ins. Exch.*, 786 P.2d 763 (Utah Ct. App.1990) (other citations omitted))). A provision excepting certain losses from coverage is therefore not automatically construed against the insurer. Rather, it is only when the insurer uses language that is ambiguous, that "doubt is resolved against the insurer." *Alf,* 850 P.2d at 1274.

A policy is ambiguous only if it is not " 'plain to a person of ordinary intelligence and understanding.' " *Nielsen*, 848 P.2d at

666 (quoting *LDS Hosp. v. Capitol Life Ins. Co.*, 765 P.2d 857, 858–59 (Utah 1988)). "A contract may be ambiguous because it is unclear or omits terms or ... 'if the terms used to express the intention of the parties may be understood to have two or more plausible meanings.'" *Alf*, 850 P.2d at 1274 (quoting *Village Inn*, 790 P.2d at 583) (footnote omitted). "However, policy terms are not necessarily ambiguous just because one party seeks to endow them with a different interpretation according to his or her own interests." *Id.* at 1274–75 (footnote omitted). Rather, the other interpretation proposed must be plausible and reasonable in light of the language used.

■ In sum, we reject J.B. Ranch's broad assertion that "[it] is entitled to a strong presumption in favor of coverage under the Policy." This assertion is only true if the policy or provision at issue is first determined to be ambiguous. Absent a finding of ambiguity, we simply construe the policy according to its plain and ordinary meaning. With these principles in mind, we now turn to J.B. Ranch's arguments concerning the meaning of the policy at hand.

## II. CONSTRUCTIVE NOTICE THAT ARISES FROM A DUTY TO INQUIRE FURTHER

J.B. Ranch contends that the court erred by construing the policy's definition of "public records" too narrowly. As set forth above, schedule B of the policy excepted "[e]asements, claims of easement or encumbrances which are not shown by the public records" from coverage. The policy further defined the term "public records" as "those *records which by law impart constructive notice* of matters relating to said land." (Emphasis added.) J.B. Ranch asserts that this definition includes the class "D" road maps on file with the Grand County Clerk's Office because First American allegedly had constructive notice of them. We disagree.

■ We note that J.B. Ranch is correct that there are two types of constructive notice that are generally recognized.

One kind of constructive notice is notice which results from a record or which is imputed by the recording statutes; and the other is notice which is presumed because of the fact that a person has knowledge of certain facts which should impart to him, or lead him to, knowledge of the ultimate fact.

66 C.J.S. Notice § 6 (1950) (footnotes omitted). We also agree that Utah law recognizes both types of constructive notice. The first type is evidenced in the Utah Recording Statute, Utah Code Ann. § 57–3–2(1), which provides that documents and instruments filed with the county recorder pursuant to this statute "impart notice to all persons of their contents."[1] Our case law has also recognized the second type of constructive notice—inquiry notice. *See County Bd. of Equalization v. State Tax Comm'n*, 789 P.2d 291, 294 (Utah 1990) (stating in dictum that purchaser had inquiry notice of unassessed property taxes); *Meyer v. General American Corp.*, 569 P.2d 1094, 1097 (Utah 1977) (stating that "[c]onstructive notice can occur when circumstances arise that should put a reasonable person on guard so as to require further inquiry on his part"); *Universal C.I.T. Corp. v. Courtesy Motors*, 8 Utah 2d 275, 277–78, 333 P.2d 628, 629 (1959) (holding that the buyer was on inquiry notice that title to motor vehicle was defective); *Salt Lake, Garfield & W. Ry. v. Allied Materials Co.*, 4 Utah 2d 218, 291 P.2d 883 (1955) (explaining and applying the doctrine of inquiry notice). Notwithstanding the foregoing, we do not agree that the term "public records," as defined in the First American policy, can be reasonably interpreted to include this latter type of constructive notice.

First American's brief correctly states that "[c]overage depends only on whether the easement is disclosed by those records which impart constructive notice under Utah law." This is so because the policy defines "public records" as "those *records which by law impart* constructive notice." (Emphasis added.) Thus constructive notice must arise from the record itself in order for it to be a "public record" as defined in the policy. We

---

1. We note that both parties agree that the policy's definition of "public records" includes records which impart this type of constructive notice.

conclude that inquiry notice does not arise from records, and therefore, is not included in the policy's definition of public records.

■ As stated above, inquiry notice "occur[s] when circumstances arise that should put a reasonable person on guard so as to require further inquiry on his part." *Meyer,* 569 P.2d at 1097. In *Allied Materials,* this court stated the rule of inquiry notice as follows:

> " ' "Whatever is notice enough to excite attention and put the party on his guard and call for inquiry is notice of everything to which such inquiry might have led. When a person has sufficient information to lead him to a fact, he shall be deemed conversant of it." ' "

291 P.2d at 885 (quoting *O'Reilly v. McLean,* 84 Utah 551, 564, 37 P.2d 770, 775 (1934) (other citations omitted)). The *Allied Materials* case involved a quiet title action by a railroad company claiming a right-of-way over the defendant's land. Although the actual decree condemning the defendant's land and giving the railroad company a right-of-way was not recorded, there was a subsequent recorded deed within the defendant's chain of title that made reference to the decree of condemnation. *See id.* at 884. Furthermore, there were railroad poles, guy wires, and trolley wires that encroached upon defendant's land. *See id.* On the basis of these facts, this court held that the defendant was on inquiry notice (i.e., constructive notice) of the condemnation decree when it purchased the land. *See id.* at 886. Therefore, *Allied Materials* shows that inquiry notice arises from knowledge of certain facts and circumstances, not from records.

The specific facts of this case further support our holding that inquiry notice does not arise from records. J.B. Ranch avows that "First American through its standard title investigations in Moab *was aware of sufficient facts* that it was obligated to inquire further about the status of the roads traversing J.B. Ranch's property." (Emphasis added.) In opposing First American's motion for summary judgment, J.B. Ranch submitted the affidavit of Bobbie Domenick, a former Grand County clerk, who averred that from 1978 to 1986 there were four class "D"

road maps on file with the Grand County Clerk's Office. It also submitted the affidavit of Jane K. Tuft, an employee of the Grand County Surveyor, who averred that employees of Southeastern Utah Title Company, an agent of First American, had requested copies of class "D" road maps on past occasions and that she had directed them to the county clerk's office. J.B. Ranch then maintained that First American possessed sufficient information to charge it with inquiry notice of the maps and the information contained therein. The foregoing shows that First American's alleged constructive notice of Grand County's claims arose from its knowledge of facts, i.e., the existence of the class "D" road maps on file with the county clerk's office, and not from the maps themselves.

■ In sum, we conclude that J.B. Ranch's interpretation of the term "public records," as defined by the policy, is unreasonable. The policy's definition of "public records" requires that the record itself impart constructive notice. Inquiry notice, however, arises from the knowledge of certain facts and circumstances that are sufficient to give rise to a duty to inquire further; it does not arise from a record.

In addition, we conclude that the exception at issue is unambiguous. In our view, the term "public records" as defined in the policy includes only those records which by statute impart constructive notice. Hence, J.B. Ranch was not entitled to have the exception construed against First American and in favor of coverage. Rather, the trial court was correct in construing it according to its plain and ordinary meaning.

## III. CONSTRUCTIVE NOTICE FROM RECORDED DOCUMENTS

J.B. Ranch's final argument is that the trial court erred in holding that class "D" road maps on file with the county clerk's office pursuant to Utah Code Ann. § 27–12–26 are not records that impart constructive notice. The parties both agree that records which by statute impart constructive notice of their contents constitute "public records" under the policy. Thus the only question that we must decide is whether the class "D"

road maps on file with the Grand County Clerk's Office pursuant to Utah Code Ann. § 27–12–26 impart such notice. We hold that they did not.

Section 27–12–26 provides:

It shall be the duty of the county executive of each county to determine all county roads ... and to prepare and keep current plats and specific descriptions of the same and of such other highways as he may from time to time locate upon public lands, which shall be kept on file in the office of the county clerk or recorder.

J.B. Ranch concedes, as it must, that section 27–12–26 does not contain an express statement that road maps filed with the county clerk's office pursuant to this statute impart constructive notice. It nevertheless argues that this intent may be implied in the statute.

■■■ The general rule, however, is that in the absence of an express declaration in the statute, records and documents filed pursuant to statute do not impart constructive notice. *Doris Trust Co. v. Quermbach,* 103 Utah 120, 133 P.2d 1003, 1006 (1943) (Wolfe, J., concurring); *State v. Wingett,* 136 Kan. 436, 16 P.2d 486 (1932); *Ellingsen v. Franklin County,* 117 Wash.2d 24, 810 P.2d 910, 912 (1991). Furthermore, the matter of constructive notice from recorded documents is entirely a creature of statute and not of common law. *Ellingsen,* 810 P.2d at 912; *see also* 66 Am.Jur.2d *Records and Recording Laws* § 47 (1973). Such notice must therefore be created by the statute itself or not at all.

The Utah Recording Statute, Utah Code Ann. § 57–3–2(1), further supports the foregoing rule. Section 57–3–2(1) provides that documents and instruments filed with the county recorder pursuant to this section "impart notice to all persons of their contents." Thus, when the legislature intends that a record filed pursuant to statute impart constructive notice, it makes its intent known through clear and unmistakable language.

The wisdom behind the rule requiring an express statement that records filed pursuant to a particular statute impart constructive notice is well stated in *Ellingsen.* In that case, the Washington Supreme Court held that road plats filed with the county engineer's office pursuant to statute did not impart constructive notice absent an express declaration of such intent in the statute. *Ellingsen,* 810 P.2d at 911. The court examined the history and importance of Washington's recording act. The court stated:

"It is important that a purchaser of real property ... may rely upon a title which the record shows to be in his grantor, and that *he is not required,* in the absence of notice[,] ... *to make an inquiry as to the status of the title outside of that shown by the recorded conveyances* and payment of taxes."

*Id.* at 913 (emphasis in original) (quoting *Kroetch v. Hinnenkamp,* 171 Wash. 518, 521–22, 18 P.2d 491 (1933)). The court concluded that if it were to hold that a document imparts constructive notice just because it is designated as a public record, the consequences to the recording system would be disastrous. *Id.*

■■■ Like the court in *Ellingsen,* we hold that records filed pursuant to statute do not impart constructive notice absent an express statement of such intent. The salutariness of the recording statute is that it provides stability and certainty to land titles on which purchasers must rely. If we were to expand the principle of constructive notice from recorded documents without clear legislative directive, we might wreak havoc on the recording system of this state. We therefore refuse to imply that the legislature intended that the class "D" road maps, at issue in this case and on file with the Grand County Clerk's Office pursuant to section 27–12–26, imparted constructive notice of their contents.[2]

---

2. We want to make clear that this holding neither affects nor addresses the question of whether road maps filed with the county recorder rather than the county clerk impart constructive notice. This is a completely different question than the one raised by this case because the road maps at issue here were only filed with the county clerk. In addition, we note that Utah Code Ann. § 57–3–2(1) provides that documents recorded with the county recorder pursuant to that section impart constructive notice. Thus this question is reserved for another day.

## CONCLUSION

 In light of the foregoing analysis, we conclude that schedule B of the First American policy clearly excepted Grand County's claims against J.B. Ranch from coverage. First American therefore had no duty to defend J.B. Ranch in that litigation. The order of the trial court granting First American summary judgment is thus affirmed.

STEWART, ZIMMERMAN, RUSSON, and YOUNG, JJ., concur in Chief Justice HOWE's opinion.

Having disqualified herself, DURHAM, Associate C.J., does not participate herein; DAVID S. YOUNG, D.J., sat.