1999 UT 23

**S.W. ENERGY CORPORATION, a Utah corporation, Plaintiff and Appellant,**

v.

**CONTINENTAL INSURANCE COMPANY and Marine Office of America Corporation, Defendants and Appellees.**

**No. 970520.**

Supreme Court of Utah.

March 12, 1999.

---

Robert P. Hill, John A. Adams, Salt Lake City, for plaintiff.

Scott W. Christensen, Jaryl L. Rencher, Bradley R. Helsten, Salt Lake City, for defendants.

RUSSON, Justice:

¶ 1 S.W. Energy Corporation ("S.W.Energy") appeals from the district court's grant of summary judgment in favor of Continental Insurance Company and Marine Office of America Corporation (collectively, "the insurer"). The district court ruled, as a matter of law, that S.W. Energy's loss of oil from one of its oil storage tanks was not covered by the insurance policy issued by the insurer, but fell within the policy's exclusion for losses caused by rust or corrosion. We affirm.

## BACKGROUND

¶ 2 S.W. Energy owns and operates oil and gas wells located in Grand County, Utah. On November 26, 1995, one of S.W. Energy's on-site oil storage tanks ruptured, spilling 495 barrels of crude oil onto the ground. At the time of the spill, S.W. Energy's property was insured by an "Oil and Gas Lease Property" policy which covered "*tanks,* pumps, machinery, pipe, and all other similar equipment and/or personal property of a mobile or floating nature, *including all crude petroleum in tanks,* usual to the operation of a producing Oil or Gas Well, while situated at producing well sites." (Emphasis added.) The policy insured against "[a]ll risks of direct physical loss of or damage to [the aforementioned items of covered property] except as hereinafter provided." The policy thereafter stated that it did not insure against "[l]oss or damage *caused by* vermin, wear and tear, gradual deterioration or inherent defect, *rust, corrosion,* freezing, faulty design, mechanical breakdown, and faulty workmanship or materials in the course of any renovating, refinishing or repairing process, delay or loss of use." (Emphasis added.)

¶ 3 In a "Property Loss" form dated December 14, 1995, S.W. Energy notified the insurer of the oil spill and made claim for the loss, listing "Crude Oil/Tank" as the property insured. The insurer immediately investigated the loss, concluding that the oil spilled out of a two-inch hole in the floor of the oil tank and that the hole developed from rust and corrosion on the outside of the tank floor over a prolonged period. The tank was over thirty-two years old at the time of the spill.

¶ 4 Due to the results of this investigation, and in reliance on the policy's exclusion of coverage for losses caused by rust or corrosion, the insurer notified S.W. Energy by letter dated February 8, 1996, of its decision to "decline coverage for this matter in its totality." The insurer received no response to its denial of coverage until it received a letter from S.W. Energy's attorney dated April 10, 1996, requesting reconsidera-

tion of the matter. Specifically, S.W. Energy's attorney contended that while the damage to the storage tank was caused by rust and corrosion and was therefore excluded from coverage under the policy, the crude oil itself was not rusted or corroded and, thus, coverage for its loss should not have been denied.

¶ 5 After receipt of this letter, the insurer arranged for an additional, independent investigation of the loss, which also concluded that the oil spilled through a hole in the storage tank created by rust and corrosion. On the same day these results were released, June 5, 1996, the insurer confirmed to S.W. Energy's attorney its denial of the entire claim, including the loss of oil, based on the corrosion exclusion.

¶ 6 On August 1, 1996, S.W. Energy filed suit against the insurer, claiming breach of contract, breach of the implied covenants of good faith and fair dealing, insurance fraud, conversion, breach of fiduciary duty, and punitive damages. After limited discovery, S.W. Energy moved for partial summary judgment, arguing that the policy covered the loss of oil and that, by rejecting the claim for coverage of the lost oil, the insurer breached its duty of good faith under the policy. In response, the insurer filed a cross-motion for summary judgment, asserting that the policy unambiguously excluded coverage for losses caused by rust or corrosion, that the loss of oil at issue was caused by rust and corrosion, and that S.W. Energy's claims should be dismissed as a matter of law.

¶ 7 The district court agreed with the insurer, granting its motion for summary judgment on all claims and denying S.W. Energy's motion. The court reasoned that the hole in the storage tank was caused by rust and corrosion; the oil was lost because of the hole in the tank; and although the oil itself was not rusted or corroded, its loss was caused by the rust and corrosion of the tank and therefore fell within the policy's exclusion. The court also ruled that the insurer's decision to deny coverage was proper and

timely and, as a result, the insurer was not subject to the claims of bad faith, insurance fraud, conversion, breach of fiduciary duty, or punitive damages.

¶ 8 S.W. Energy appeals the district court's grant of summary judgment. For purposes of appeal, S.W. Energy does not contest that the hole in the oil storage tank was caused by rust and corrosion, but argues instead that under the plain language of the policy, the loss of oil did not come within the policy's exclusion. S.W. Energy reasons that since the policy insures only against risks of direct loss or damage, the exclusion clause likewise should be construed to exclude only loss or damage directly caused by rust or corrosion. S.W. Energy contends that while the tank was damaged by rust and corrosion, the loss of oil was caused only indirectly by the rust and corrosion and, therefore, the exclusion does not apply to that loss. In support of this argument, S.W. Energy notes that the crude oil was separately insured and, since it was not itself rusted or corroded, the loss of oil does not come within the policy's exclusionary language.

¶ 9 As an alternative argument, S.W. Energy posits that summary judgment in favor of the insurer was improper because, in light of S.W. Energy's proposed interpretation of the policy, described above, the policy is ambiguous. Thus, according to ordinary rules of insurance policy construction, the disputed provision should have been construed in favor of coverage. As a corollary to this argument, S.W. Energy charges that the insurer breached its duty of good faith by not recognizing as plausible S.W. Energy's construction of the policy when it chose to deny coverage.

¶ 10 The insurer responds that summary judgment in its favor was proper because the policy is unambiguous and, under its plain language, the loss of oil was correctly excluded from coverage. The insurer continues that its denial of coverage was not only proper, but timely, and as a result, the claims for bad faith, fraud, conversion, and punitive damages fail. The principal issue before us,

therefore, is whether the trial court erred in ruling that the insurance policy unambiguously excluded from coverage S.W. Energy's loss of oil and in dismissing S.W. Energy's corollary claims for bad faith.

## STANDARD OF REVIEW

¶ 11 Summary judgment is appropriate only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Utah R. Civ. P. 56(c). In this case, there are no issues of material fact, and our review is limited to determining whether the district court correctly applied the governing law. Interpretation of an insurance policy involves ordinary rules of contract construction. *See Nielsen v. O'Reilly,* 848 P.2d 664, 665 (Utah 1992). We accord no deference to the trial court's interpretation of the policy, but review the court's legal conclusions for correctness. *See Alf v. State Farm Fire & Cas. Co.,* 850 P.2d 1272, 1274 (Utah 1993).

## ANALYSIS

¶ 12 An insurance policy is a contract between the insurer and the insured and, accordingly, is subject to the general rules of contract construction. Courts determine the legal import of insurance policies, affording the policy terms their usually accepted meanings and giving effect to and harmonizing to the extent possible all policy provisions. *See Nielsen,* 848 P.2d at 665. If a policy is ambiguous, it is construed liberally in favor of the insured so as to promote the purposes of insurance. *See United States Fidelity & Guaranty Co. v. Sandt,* 854 P.2d 519, 521–22 (Utah 1993).

¶ 13 If a policy is not ambiguous, however, no presumption in favor of coverage arises; rather, the policy language is construed pursuant to its ordinary meaning. *See Alf,* 850 P.2d at 1274. This rule, contrary to S.W. Energy's assertion, applies with equal force to policy provisions excepting certain losses from coverage. *See First Am. Title Ins. Co. v. J.B. Ranch,* 966 P.2d 834, 836 (Utah 1998). Coverage exclusions are not construed automatically against the insurer; rather, such a construction applies only when, as for any other policy provision, the language of the exclusion is ambiguous. *See id.*

¶ 14 Whether an insurance policy is ambiguous is a question of law. A policy may be ambiguous if it is unclear, omits terms, or is capable of two or more plausible meanings. *See id.* at 836–37. However, "policy terms are not necessarily ambiguous simply because one party seeks to endow them with a different interpretation according to his or her own interests." *Alf,* 850 P.2d at 1274–75. To the contrary, the proposed interpretation "must be plausible and reasonable in light of the language used." *J.B. Ranch,* 966 P.2d at 837.

¶ 15 In the case at bar, S.W. Energy suggests that its interpretation of the policy, i.e., that the loss of oil was not caused by rust or corrosion under the terms of the exclusionary clause, is the only plausible reading of the policy or, alternatively, at least creates an ambiguity that must be resolved in favor of coverage. We find nothing ambiguous about the policy, however.

¶ 16 The exclusionary clause states in pertinent part, "This policy does not insure against ... [l]oss or damage caused by vermin, wear and tear, gradual deterioration or inherent defect, rust, corrosion, freezing, faulty design, mechanical breakdown." The plain meaning of this language is that any loss or damage *caused by* one or more of the items listed is not covered under the policy. The ordinary meaning of "caused by" comprehends both direct and incidental damages where there is a clear causal link. *Cf. Adams–Arapahoe Joint School Dist. v. Continental Ins. Co.,* 891 F.2d 772, 776 (10th Cir.1989) (interpreting similar coverage exclusion for losses caused by rust or corrosion pursuant to plain meaning). Under this exclusion, S.W. Energy's claim was properly denied because there is a direct causal link between the rust and corrosion of the storage

tank and the loss of oil: the rust and corrosion created a two-inch hole in the tank floor through which the oil spilled.

¶ 17  S.W. Energy's contention that the loss of oil is not excluded from coverage because the oil itself was not rusted or corroded represents a fundamental misreading of the policy language.  The exclusionary clause does not state that losses or damages *consisting of or including* rust or corrosion are excluded; rather, it states that losses or damages *caused by* rust or corrosion are excluded.  In other words, the damages excluded from coverage are not the conditions of rust and corrosion in and of themselves, but any loss or damage caused by or resulting from those conditions.  This certainly encompasses oil that spills out of a hole created by rust and corrosion; but for these decaying conditions of the tank floor, the hole through which the oil spilled would not have developed.

¶ 18  To adopt S.W. Energy's proposed interpretation would be to hold that all losses of oil are covered by the policy regardless of whether the loss was a result of neglect by S.W. Energy in maintaining its oil storage tanks or the pipes through which the oil flows.  For instance, in addition to coverage being excluded for losses caused by rust or corrosion, the exclusion states that losses caused by faulty design or mechanical breakdown are not covered.  It certainly is foreseeable that, due to improper construction or inadequate maintenance, for example, oil storage tanks or pipes could have a faulty design or suffer a mechanical breakdown, resulting in a loss of the crude oil contained therein.  Under S.W. Energy's proffered interpretation of the policy, however, such loss of oil would not be excluded from coverage because the crude oil itself was not faultily designed or mechanically broken.  This view of the policy contravenes the underlying purpose of exclusionary clauses such as the one at issue, namely, to hold the insured responsible for losses it could have prevented by the exercise of reasonable care over instrumentalities within the insured's control.  *See* Kenneth S. Abraham, *Distributing Risk: In-*

*surance, Legal Theory, and Public Policy* 14–15, 35–36 (1986).  Excluding coverage for certain losses, the prevention of which is within the insured's control, advances the objectives of insurance by reducing carelessness by the insured.  *See id.*

¶ 19  In addition, we find no merit in S.W. Energy's assertion that while the damage to the tank was a direct result of rust and corrosion, the loss of oil was not.  S.W. Energy argues that the loss of oil resulted only indirectly from the corrosion and rust and, thus, is not excluded from coverage.  This argument is flawed.  First, the language of the policy does not distinguish between direct and indirect losses, and there is no basis for us to read such a distinction into the exclusionary clause.  Second, S.W. Energy's argument is unsound conceptually: if "indirect" refers to a secondary or less foreseeable consequence of an accident, as S.W. Energy's argument necessarily implies, then there must be a direct or superseding cause of loss.  S.W. Energy, however, identifies no cause of the loss of oil, much less a direct cause, other than the hole in the tank created by rust and corrosion.  S.W. Energy's attempt to create ambiguity in this regard, where there is none, fails.  Its construction of the policy is not plausible.

¶ 20  Finally, given that the insurer's denial of coverage was proper, S.W. Energy's claims for bad faith, insurance fraud, conversion, breach of fiduciary duty, and punitive damages were appropriately dismissed.  *See Billings v. Union Bankers Ins. Co.*, 918 P.2d 461, 465 (Utah 1996) ("[W]hen an insured's claim is fairly debatable, the insurer is entitled to debate it and cannot be held to have breached the implied covenant [of good faith] if it chooses to do so."); *see also Bartlett v. John Hancock Mutual Life Ins. Co.*, 538 A.2d 997, 1000 (R.I.1988) (explaining that there can be no cause of action against insurer for bad faith refusal to pay claim until insured establishes absence of reasonable basis for denying coverage).  Nothing in the record of this case suggests that the insurer was dilatory or otherwise unreasonable in its investigation of S.W. Energy's claim or in its determination to deny coverage.

## CONCLUSION

¶ 21 In view of the foregoing analysis, summary judgment in favor of the insurer on all claims was proper. The district court correctly ruled that the insurance policy was unambiguous and that, under the policy, S.W. Energy's loss of oil was excluded from coverage. S.W. Energy's remaining claims were properly dismissed.

¶ 22 Affirmed.

¶ 23 Chief Justice HOWE, Associate Chief Justice DURHAM, Justice STEWART, and Justice ZIMMERMAN concur in Justice RUSSON's opinion.